902 So.2d 373 (2005)
Robert M. MARIONNEAUX, Jr., and Lee Joseph "Jody" Amedee, III
v.
Donald E. "Don" HINES, President of the Senate, and Arthur J. Lentini, Parliamentarian of the Senate.
No. 2005-OC-1191.
Supreme Court of Louisiana.
May 12, 2005.
Opinion Issued May 17, 2005.
*374 Unglesby & Marionneaux, Robert M. Marionneaux, Jr., Jerry J. Guillot, Glen A. Koepp, Mary F. Quaid, Baton Rouge, Alfred W. Speer, II, Clayton, Law Offices of Gauthier & Amedee, Lee J. Amedee, III, Gonzales, Arthur J. Lentini, APLC, Arthur J. Lentini, Metairie, Counsel for Applicant.

DECREE
For the reasons to be recited in an opinion to follow, judgment is rendered in favor of plaintiffs and against defendants on plaintiffs' petition for declaratory judgment. Accordingly, it is ordered, adjudged and decreed that there be judgment herein declaring that "elected members" or "members elected" as that term is used in the Louisiana Constitution in referring to the members of the Senate means the entire membership authorized to be elected, regardless of any vacancies, so that the current number of "elected members" or "members elected" of the Senate is thirty-nine.
WEIMER, J.
This petition for declaratory judgment is before the court for a determination of the number of votes required for final passage of bills by the Louisiana Senate during the current legislative session in light of a "vacancy"[1] in two of the 39 senatorial districts, which vacancies reduce the number of senators from the usual 39 to 37. Thus, *375 the issue is whether "elected members" as used in the Louisiana Constitution means, as plaintiffs/intervenor contend, "the entire membership authorized to be elected to each house" or whether "elected members" means, as defendants content, the elected, seated, and sworn members. In sum, plaintiffs suggest vacancies should be counted to determine the number of "elected members" whereas defendants suggest vacancies should not be counted.
The litigants, all Louisiana legislators, dispute whether the number required for a simple majority remains at 20, as the plaintiffs argue, or is reduced to 19, as the defendants assert, and whether the number required for a two-thirds vote remains at 26, as the plaintiffs argue, or is reduced to 25, as the defendants assert. We resolve this extraordinary issue in favor of the plaintiffs and hold that "elected members" or "members elected" as those terms are used in the Louisiana Constitution in referring to the members of the Senate means the entire membership authorized to be elected, regardless of any vacancies, so that the current number of "elected members" or "members elected" of the Senate is 39.

FACTS AND PROCEDURAL STATUS
The Louisiana legislature consists of a Senate and a House of Representatives. La. Const. art. III, § 1(A). The legislature is a "continuous body during the term for which its members are elected." La. Const. art. III, § 1(B). Article III, § 3 provides that the number of members of the legislature shall be provided by law, but the number of Senators shall not exceed 39 members. Louisiana Revised Statutes 24:35.1 provides the senate shall be composed of 39 members, elected from 39 senatorial districts.
On January 12, 2004, the oath of office for members of the Louisiana Senate was taken by 39 duly elected individuals. However, on April 12, 2005, Senator Lambert Boissiere resigned, creating a vacancy in the senate seat for District No. 3. A primary election to fill the vacancy is scheduled for May 21, 2005, with a general election, if necessary, scheduled for June 18, 2005. The unfortunate death of Senator John J. Hainkel, Jr., on April 15, 2005, created a vacancy in District No. 6. A primary election to fill that vacancy is scheduled for June 4, 2005, with a general election, if necessary, scheduled for July 9, 2005.
When the legislature convened at the state capitol in Baton Rouge at noon on April 25, 2005, to conduct the 2005 regular session, there were 37 senators and two vacancies. As the regular session must conclude on or before June 23, 2005, the vacancies will exist during most, if not all, of the current session. Thus, the number of senators required for a quorum, a simple majority, and a two-thirds majority became a disputed issue.[2]
Senator Robert M. Marionneaux, Jr., of District No. 17, and Senator Lee Joseph "Jody" Amedee, III, of District No. 18, filed a petition for declaratory judgment in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. They named as defendants Senator Donald E. "Don" Hines of District No. 28, who serves as President of the Louisiana Senate, and *376 Senator Arthur J. Lentini of District No. 10, who serves as Parliamentarian of the Louisiana Senate. The petition, the answer, memoranda, and stipulations were filed on May 4, 2005. The House of Representatives intervened in the suit.
After the district court scheduled a hearing for May 16, 2005, all parties filed an application directly to this court, seeking either immediate consideration by this court, without a trial court decision, or an order from this court directing the trial court to immediately consider the matter. We granted certiorari and ordered the record brought up to this court for immediate resolution. Marionneaux v. Hines, 05-1191 (La.5/10/05), 902 So.2d 373.

DISCUSSION
The threshold issue regarding exercise of our supervisory jurisdiction is twofold: first, the need to bypass the lower courts because of the extraordinary nature of this controversy; second, the necessity of a justiciable controversy for rendering a declaratory judgment.
The Supreme Court of Louisiana has been granted supervisory powers since the Louisiana Constitution of 1879. Albert Tate, Jr., Supervisory Powers of the Louisiana Courts of Appeal, 38 Tul. L.Rev. 429, 430 (1964). Supervisory authority of this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. Progressive Security Insurance Company v. Foster, 97-2985 (La.4/23/98), 711 So.2d 675, 678 n. 3. This court can intervene under its own plenary supervisory powers, whether or not an intermediate court has properly acted on the matter. Tate, supra, at 430.
Although this court does not exercise its supervisory jurisdiction lightly, there are instances in which writs are granted even though the relator has not exhausted available remedies in the lower court. Comment, Supervisory Powers of the Supreme Court of Louisiana Over Inferior Courts, 34 Tul. L.Rev. 165, 171 (1959); see also Hainkel v. Henry, 313 So.2d 577, 578 (La.1975). Due in part to proper deference to the lower courts, this court must remain reluctant to exercise its authority to hear a matter prior to a lower court determination. However, this matter presents itself in a particularly uncommon fashion in that the parties stipulated to all facts and the matter presents only a question of law which affects presently pending legislation and the conduct of the legislature during this session, as well as future legislative sessions. Id. Absent a prompt response by this court, legislative actions now in progress may be invalid, thus spawning future litigation. The ultimate issue of the meaning of "elected members" as used in the Louisiana Constitution of 1974 (see Footnote 2, supra) is an issue that affects a fundamental political process in our representative form of government. The issue affects the entire state, not merely the legislature; it affects the validity of the actions taken by the Senate on bills pending before it that relate to all of the citizens of Louisiana. Further, judicial economy is best served by this court's exercising its supervisory jurisdiction. A matter as heavily impressed with public interest as the debate over the voting requirements for legislative action requires an immediate answer.
The need to resolve this matter expeditiously was pointed out by all parties in their briefs to this court. Indeed, the parties stipulated in the district court that "[o]ver one thousand bills and joint resolutions have been introduced or will be considered by the Legislature, including over three hundred bills and joint resolutions currently in the Senate awaiting action by that house." Additionally, "[a]ppropriations *377 for the operating expenses of state government enacted in the 2004 Regular Session expire on June 30, 2005. House bills appropriating money for the operating expenses of state government for the upcoming fiscal year must be enacted."
Prompted by the above considerations and the requests of plaintiffs, intervenor, and defendants, this court has concluded the exercise of its supervisory jurisdiction should not be deterred by the fact this matter had been docketed and set for hearing in the district court.
The second query as to the propriety of our granting a writ in this request for declaratory judgment is the existence of a justiciable controversy. This court recently stated:
Courts are without power to grant declaratory relief unless [a justiciable] controversy exists. To avoid deciding abstract, hypothetical, or moot questions, courts require cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely.... "These traditional notions of justiciability are rooted in our constitution's tripartite distribution of powers into the executive, legislative, and judicial branches of government." Perschall v. State, 96-0322, p. 15 (La.7/1/97), 697 So.2d 240, 251. Essential to the exercise of this state's judicial power is the threshold requirement of a dispute, that is, "adverse parties with opposing claims ripe for judicial determination." Id.

... We have declined jurisdiction over issues posed in the abstract. We have declined jurisdiction when actions do not involve specific adversarial questions asserted by interested parties based on existing facts.
....
"[A] person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute." Louisiana Associated General Contractors, Inc. v. State, Division of Administration, Office of State Purchasing, 95-2105, p. 7, (La.3/8/96), 669 So.2d 1185, 1191, quoting In Re P.V.W., 424 So.2d 1015, 1020-21 n. 10 (La.1982).
Prator v. Caddo Parish, 04-0794, pp. 5-9 (La.12/1/04), 888 So.2d 812, 815-817.
As in Prator we find the instant matter satisfies the requirement of a justiciable controversy warranting exercise of this court's supervisory jurisdiction.
Reaching the merits of this case, we begin as we must with the words of the constitution. Intervenor points out "elected members" appears 73 times and "members elected" appears 3 times in the 1974 Louisiana Constitution. As previously indicated, the issue presented between the plaintiffs/intervenor versus the defendants is whether the terms within the constitution "members elected" or "elected members" mean, as plaintiffs/intervenor contend, the entire membership authorized to be elected to each house (i.e., 39) or whether "elected members" means, as defendants contend, the elected, seated, and sworn members on the legislative day on which a vote is taken (i.e., 37 after deducting 2 vacancies).
As intervenor, the Louisiana House of Representatives, points out in brief to this court, there has already been a ruling by this court regarding the interpretation of the constitutional vote requirements. In State ex rel. Garland v. Guillory, 184 La. 329, 166 So. 94 (1935), the court was called upon to interpret the meaning of "two-thirds vote of the membership of each house" as called for by La. Const.1921, art. VII § 34. While the decision in that case resulted in a four-to-three vote, in drawing *378 a distinction between "members elected" and other language using the term "membership of each house," the court was, in effect, unanimous in determining "members elected" means the entire membership authorized to be elected to each house. The Garland majority held, and reiterated in per curiam, that "provisions of the Constitution requiring two-thirds of the members elected to each House [i.e., the House of Representatives and the Senate] to pass certain kinds of legislation ... means two-thirds of the entire membership authorized to be elected to each House." (Emphasis added.) Garland, on reh'g, 184 La. at 399-400, 166 So. at 117. Garland effectively defined "members elected" as a term referring to the entire membership authorized to be elected to the House of Representatives and to the Senate.[3]
Garland preceded the 1973 Constitutional Convention.[4] It must be presumed the drafters of constitutional language use words and phrases in light of the judicial decisions interpreting such phrases. See Succession of Lambert, 210 La. 636, 718, 28 So.2d 1, 28 (1946). Thus, we can only conclude that the knowledge shared amongst the delegates, but not memorialized *379 in the records, as to the meaning of "elected members" and "members elected" was that each phrase meant the entire membership authorized to be elected to each house.
This court is the final arbiter of the meaning of the language of the constitution. State v. Peart, 621 So.2d 780, 790 (La.1993). Because of the meaning assigned to these terms by this court and the use of these terms in the Louisiana Constitution of 1974, we must be consistent and continue to assign the same meaning. The drafters of the constitution were entitled to rely on this court's pronouncements defining the same terms contained in previous constitutions. Although there is nothing in the minutes of the constitutional convention to reflect that a definition of "elected members" was overtly discussed, we do have references to the meaning ascribed by some delegates. Delegate DeBlieux, a member of the state Senate, while debating the adoption of a legislative proposal stated: "If this stated two-thirds of those present and voting, that would be alright. But it says two-thirds of the elected members which means that if it's the Senate, you have got to have at least 26, and the House, you have got to have at least seventy." (Emphasis supplied.) La. Constitutional Convention 1973, Transcripts for August 1, 1973, Vol. V, page 491. Additionally, Delegate Tobias in questioning Delegate Abraham concerning the process for declaring a statewide elected official disabled, stated: "[A]re you aware that under the proposal that your Committee has adopted that it would take 105 elected officials [70 House members, 26 senators, 5 statewide elected officials, and 4 Supreme Court justices] of this state to successfully declare a person unable to perform his duties?" La. Constitutional Convention 1973, Transcripts for August 10, 1973, Vol. VI, page 695.[5]
Although the defendants made a cogent argument that if a senator is deceased or has resigned the senator cannot be an "elected member," this court gave specific meaning to the term "members elected" in Garland. The constitutional convention apparently made a conscious effort to insert these terms into the constitution.[6] Thus, although "elected members" and "members elected" are not defined in the Louisiana Constitution of 1974, the terms were previously defined by this court. In the instant matter we adhere to that definition.
Accordingly, we hold that the two vacancies existing in the current Senate have no effect on the counting of votes. Contrary to the defendants' contentions, the Louisiana Senate's votes shall be calculated on the entire membership of 39 senators.[7] For the sake of completeness, we reiterate, in part, the Decree previously issued by this court in this matter.

DECREE
Judgment is rendered in favor of plaintiffs and against defendants on plaintiffs' *380 petition for declaratory judgment. Accordingly, it is ordered, adjudged, and decreed that there be judgment herein declaring that "elected members" or "members elected," as that term is used in the Louisiana Constitution in referring to the members of the Senate, means the entire membership authorized to be elected, regardless of any vacancies, so that the current number of "elected members" or "members elected" of the Senate is thirty-nine.
NOTES
[1] "A vacancy, as used in this Constitution, shall occur in the event of death, resignation, removal by any means, or failure to take office for any reason." La. Const. art. X, § 28.
[2] A majority of elected members of each house of the legislature is required to form a quorum to transact business. La. Const. art. III, § 10(A). The favorable vote of at least a majority of the members elected to each house is required for a bill to become law. La. Const. art. III, § 15(G). Numerous other constitutional provisions, many of which deal with taxes or other financial matters, require a vote of two-thirds of the elected members of each house for passage.
[3] This court's holding in Garland is rooted in history. LUTHER STEARNS CUSHING, LEX PARLIAMENTARIA AMERICANA: ELEMENTS OF THE LAW AND PRACTICE OF LEGISLATIVE ASSEMBLIES IN THE UNITED STATES OF AMERICA (F.B. Rothman 1989) (1856), states at Part II, Chap. I., § 261, p. 100:

When the number, of which an assembly may consist, at any given time, is fixed by constitution, and an aliquot proportion of such assembly is required in order to constitute a quorum, the number of which such assembly may consist and not the number of which it does in fact consist, at the time in question, is the number of the assembly, and the number necessary to constitute a quorum is to be reckoned accordingly. [Footnote omitted.]
Cushing goes on to explain that this rule applied to the United States Senate "whether the States have all exercised their constitutional right or not" to seat two senators. Likewise, in the United States House of Representatives the number used to calculate the quorum was the "whole number ... making no deductions on account of vacant districts." Id.
Garland cites another historic authority, 1 THOMAS M. COOLEY, A TREATISE ON THE CONSTITUTIONAL LIMITATIONS WHICH REST UPON THE LEGISLATIVE POWER OF THE STATES OF THE AMERICAN UNION (Walter Carrington ed., Boston: Little, Brown & Co. 8th ed.1927) (1868), as support for this court's definition of "members elected." Citing Satterlee v. San Francisco, 23 Cal. 314, 1863 WL 686 (1863), Cooley explains: "Where a majority of all the members elected is required in the passage of a law, an ineligible person is not on that account to be excluded in the count." Cooley, supra note 2, at 291.
[4] The intervenor has been candid with this court in suggesting that subsequent to Garland, this court appeared to depart from the definition set out therein by "obliquely" referring to calculations that would not reflect use of the entire membership authorized to be elected to each house. We have reviewed those cases and find such references inconsequential, as the cases are distinguishable. The cases were Sullins v. City of Shreveport, 252 La. 423, 211 So.2d 314 (1968), and State v. Reado, 295 So.2d 440 (La.1974), two cases in which this court was interpreting the procedure and vote necessary to expand a budget session under the La Const.1921 art. III, § 8, which required a three-fourths vote of the elected members of each house. The Sullins opinion stated the vote was 95-0 in the House, and then proceeded to give some percentage figures to illustrate that the vote far exceeded the three-fourth requirement. However, the figures stated in the opinion do not reflect the actual membership of the house at that time and, therefore, were an inaccurate mathematical calculation. In Reado, which overruled Sullins on a point that is unimportant here, this court reiterated that the vote had been well over three-fourths, without engaging in another calculation of percentages. What is significant about both cases is that this court did not directly consider a definition of the terms "elected members" and "members elected" as it had in Garland.
[5] There is a further reference to the required votes by Delegate Tate at La. Constitutional Convention 1973, Transcripts for November 18, 1973, Vol. IX, page 2514, but Delegate Tate's statement does not definitively refer to the entire membership authorized to be elected to each house.
[6] Intervenor points out none of the changes to prior constitutional language were intended as substantive changes and the consistent use of "elected members" in all but three instances establishes the Convention's intent to have one, immalleable number of votes required.
[7] As pointed out in intervenor's brief to this court, the Louisiana House of Representatives has, in the past, adhered to this interpretation of the words "members elected" from La. Const. art. III, § 15(G). The brief cites two rulings made by Speaker John Alario in 1993 and by Speaker Hunt Downer in 1999.