937 So.2d 313 (2006)
STATE of Louisiana
v.
ALL PROPERTY AND CASUALTY INSURANCE CARRIERS AUTHORIZED AND LICENSED TO DO BUSINESS IN the STATE of Louisiana.
No. 2006-CD-2030.
Supreme Court of Louisiana.
August 25, 2006.
*315 Charles C. Foti, Jr., Attorney General, Tina V. Grant, Megan K. Terrell, Ryan M. Seidemann, Clement D. Story, III, Assistant Attorneys General, for Applicant.
Adams & Reese, Philip A. Franco, Martin A. Stern, V. Thomas Clark, Jr., Jeffrey E. Richardson, Elizabeth Roussel, Barrasso, Usdin, Kupperman, Freeman & Sarver, H. Minor Pipes, III, Bienvenu, Foster, Ryan & O'Bannon, John W. Waters, Jr., Gieger, Laborde & Laperouse, Robert I. Siegel, Plauche', Maselli, Landry & Parkerson, *316 Andrew L. Plauche', Jr., Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, Seth A. Schmeekle, Joseph P. Guichet, Ralph S. Hubbard, III, New Orleans, Nielsen Law firm, Gerald J. Nielsen, Metairie, Wendy S. Weingert, Martin, Disiere, Jefferson & Wisdom, Christopher W. Martin, Houston, TX, for Respondent.
Bradley E. Black, Counsel for William Quigley, Judson Mitchell, Jr., Cheryl P. Buchert, Ramona Fernandez, Amicus Curiae.
TRAYLOR, Justice.
We exercise our supervisory authority in an expedited manner to determine whether Acts 2006, Nos. 739 and 802, which extend the prescriptive period under which certain insurance claims arising from Hurricanes Katrina and Rita may be filed and which may alter the insurance contractual provisions regarding the time period in which to bring a claim, are constitutional. After review of the relevant state and federal law, we find that the legislative acts at issue are constitutional.

FACTS AND PROCEDURAL HISTORY
On August 29, 2005, Hurricane Katrina devastated the Gulf South region of the United States, including large land areas in the states of Louisiana, Mississippi and Alabama. In the southeastern portion of Louisiana, the storm surge swept across the coastal areas, causing extensive damage to property. In the City of New Orleans, where the levees failed, flood waters swamped large portions of the City. The physical devastation to homes and businesses in the aftermath of the storm itself and the subsequent flooding have additionally resulted in the displacement of a large portion of the population of the State who formerly resided in the storm-devastated areas. These former residents of southeastern Louisiana were scattered across all fifty states by Hurricane Katrina and hundreds of thousands are estimated to still be displaced outside of the State. A staggering number of houses and businesses in Louisiana were either destroyed or suffered major damage.
On September 25, 2005, Hurricane Rita hit the southwestern portion of the State of Louisiana. The storm surge associated with Hurricane Rita inundated coastal communities, leveled buildings and breached levees. As with Hurricane Katrina, mass displacement of residents occurred, this time of the citizens formerly residing in the southwestern segment of the state. Many of these citizens continue to be displaced at this time.
In the aftermath of these two storms, Governor Blanco issued several Executive Orders that extended various legal deadlines that were impossible to meet under the twin circumstances of physical devastation of property and displacement of citizens. See Executive Order Nos. KBB 2005-32, KBB 2005-48 and KBB 2005-67.[1] *317 As a further response to the extraordinary circumstances faced by many Louisiana citizens, the Louisiana Legislature enacted House Bill 1289 and House Bill 1302, now known as Acts 2006, Nos. 739 and 802, which extend the prescriptive period within which citizens may file certain claims under their insurance policies for losses occasioned by Hurricanes Katrina and Rita. Prior to these amendments, Louisiana law held that no insurance contract issued in Louisiana could limit the right of action against an insurer to a period less than twelve months. See La. R.S. 22:629(A)(3).
Pursuant to Section 3 of Act 739, the Louisiana Attorney General filed suit on behalf of the State of Louisiana on July 10, 2006 in the Nineteenth Judicial District Court, Parish of East Baton Rouge, ten days after the effective date of the act, seeking a declaratory judgment as to the constitutionality of the acts at issue.[2] Made defendant in this declaratory judgment action were all property and casualty insurance carriers authorized and licensed to do business in the state. Pursuant to various motions to dismiss, the State has dismissed all claims against the defendant insurers except for three insurance companies which remain in this suitAllstate Insurance Company, State Farm Insurance Company and USAA Insurance Company.[3]
*318 On July 20, 2006, Allstate Insurance Company ("Allstate") filed a Notice of Removal to Federal Court in the Middle District of Louisiana. On August 17, 2006, the federal court remanded the matter to the state district court, finding that the federal court lacked jurisdiction over the matter.
On August 17, 2006, the Louisiana Attorney General filed a writ of certiorari with the Louisiana Supreme Court, urging the court to exercise its supervisory jurisdiction and take up the matter before the district court due to the interests of judicial efficiency and in contemplation of the expiration of the former prescriptive period for citizens to file claims against their insurers. This court found that the issues presented were of an extraordinary nature, time-sensitive, and of such significant public interest that the court's plenary, supervisory jurisdiction should be exercised. See Marionneaux v. Hines, XXXX-XXXX p. 4-5 (La.5/12/05), 902 So.2d 373, 376-377 (court exercised its supervisory jurisdiction in matter which had not been docketed and set for hearing in the district court due to considerations of state-wide effect of issue, time sensitivity of pending legislation, the public interest and judicial efficiency). Pursuant to its supervisory jurisdiction, the court issued an order on August 22, 2006, granting the writ of certiorari and remanding the matter to the district court for an expedited hearing. The court additionally ordered that expedited review of the district court's decision be made available, and set forth an expedited briefing schedule and time period for oral argument. See State of Louisiana v. All Property and Casualty Insurance Carriers Authorized and Licensed to do Business in the State of Louisiana, 2006-2030 (La.8/22/06), 936 So.2d 807.[4]
The state district court held the ordered hearing on August 23, 2006, after which Judge Kay Bates issued a judgment finding the Acts at issue to be constitutional. Specifically, Judge Bates found without merit the defendants' arguments regarding standing, their asserted violation of the Contracts Clauses of the Louisiana and the United States Constitutions, their asserted violations of procedural due process, and essentially pretermitted their asserted violation of the Supremacy Clause of the United States Constitution.
On August 24, 2006, the Louisiana Attorney General sought review with this court, pursuant to the August 22, 2006 order, and oral argument was heard on August 25, 2006.[5]

*319 LAW AND DISCUSSION
The issue presented for our determination is whether the provisions of Acts 2006, Nos. 729 and 802, which extend the prescriptive periods under which certain insurance claims arising from Hurricanes Katrina and Rita may be filed and which may alter the contractual provisions of insurance policies regarding the time period in which to bring a claim, are constitutional.
The question whether the Acts at issue are constitutional is a legal question which will be reviewed de novo. Louisiana Municipal Association, et al. v. State of Louisiana and the Firefighters' Retirement System, XXXX-XXXX p. 45 (La.1/19/05), 893 So.2d 809, 842-843. This court has repeatedly held that statutes and legislative acts are generally presumed to be constitutional and the party challenging the validity of the statute has the burden of proving it is unconstitutional. Id.; State v. Fleury, XXXX-XXXX p. 5 (La.10/16/01), 799 So.2d 468, 472; Board of Com'rs of North Lafourche Conservation, Levee and Drainage Dist. v. Board of Com'rs of Atchafalaya Basin Levee Dist., 95-1353 p. 3 (La.1/16/96), 666 So.2d 636, 639. Unlike the federal constitution, the Louisiana "constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature." Louisiana Municipal Association, XXXX-XXXX p. 45, 893 So.2d at 843; Board of Com'rs, 95-1353 p. 3, 666 So.2d at 639. Therefore, "[t]he party challenging the constitutionality of a statute must also cite to the specific provision of the constitution which prohibits the legislative action." Louisiana Municipal Association, XXXX-XXXX p. 45, 893 So.2d at 843; Fleury, XXXX-XXXX p. 5, 799 So.2d at 472; Board of Com'rs, 95-1353 p. 4, 666 So.2d at 639. In this declaratory judgment action, the defendants bear the burden of proving the unconstitutionality of the legislative acts at issue.
The defendants raise several grounds in the district court to support their contention that Acts 2006, Nos. 739 and 802 are unconstitutional. First, the defendants assert that the Louisiana Attorney General has no standing to bring this declaratory judgment action. Further, the defendants assert that because a portion of Act 802 refers additionally to claims brought pursuant to "flood insurance," and flood insurance is provided through the federally-administered National Flood Insurance Program, that the state legislative act violates the Supremacy Clause of the United States Constitution. The defendants also assert that the Acts impair their contractual relationship with their policyholders, in violation of the Contract Clauses of the Louisiana and United States Constitutions. Finally, the defendants contend that their due process rights have been violated by the expedited nature of these proceedings.
Before proceeding to our analysis of these issues, we must first review the relevant legislative pronouncements.
La. R.S. 22:629(A)(3), prior to its 2006 amendment, provided:
§ 629. Limiting actions; jurisdiction.
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:
* * *
(3) Limiting right of action against the insurer to a period of less than *320 twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11) (12), and (13),[[6]] or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
Act 739 (House Bill 1289) of the 2006 Regular Legislative Session, amended La. R.S. 22:629. What had formerly been Subsection (A)(3) was redesignated as subsection (B) to provide as follows:
B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13), or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
In addition, Act 739 enacted La. R.S. 22:658.3, which provides
§ 658.3. Filing claims; extension for claims arising from hurricane activity.
A. Notwithstanding any other provision of this Title to the contrary, any person or entity having a claim for damages pursuant to a homeowners' insurance policy, personal property insurance policy, tenant homeowners' insurance policy, condominium owners' insurance policy, or commercial property insurance policy, and resulting from Hurricane Katrina shall have through September 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract.
B. Notwithstanding any other provision of this Title to the contrary, any person or entity having a claim for damages pursuant to a homeowners' insurance policy, personal property insurance policy, tenant homeowners' insurance policy, condominium owners' insurance policy, or commercial property insurance policy, and resulting from Hurricane Rita shall have through October 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract.
Act 739 was signed by the governor on June 29, 2006, and became effective on that date.[7]
The other legislative act at issue did not amend existing law or enact a new statute. Instead, Section 1 of Act 802 (House Bill 1302) set forth uncodified law, seeking generally to
prevent additional hardship to property owners who have already been overwhelmed and daunted by these hardships and have endured so much grief *321 and suffering and who soon will be forced to decide whether to institute a lawsuit to preserve their cause of action, possibly causing unnecessary litigation or compromising ongoing settlement discussions.. . .
To effectuate this purpose, Section 2 of Act 802 provides uncodified legislation to establish
an additional, limited exception to the running of prescription and, as such, prevents the running of prescription for one year on any claim seeking to recover for loss or damage to property against an insurer on any homeowners' insurance policy, including tenant and condominium policies, personal property insurance policy, commercial property insurance policy, or flood insurance policy, on any automobile or fleet policy for loss or damage to an insured's vehicle caused by flood, wind, or rain, or on any policy for loss or damage to crop or livestock, when such loss or damage was caused by or as a result of Hurricane Katrina or Hurricane Rita, or both. Accordingly, any such claim for damages caused by Hurricane Katrina shall be instituted on or before August 30, 2007, and any suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date. Any such claim for damages caused by Hurricane Rita shall be instituted on or before September 25, 2007, and any suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date.
Act 802 was signed by the governor on June 30, 2006, and became effective on that date.[8]

Applicability of the Acts
Under the former law prior to enactment of these Acts, the rights of citizens to file insurance claims for damage caused by the hurricanes would expire on the one year anniversaries of the storms,[9] August 29, 2006 and September 25, 2006 for Hurricanes Katrina and Rita, respectively. Act 739 and Act 802 became effective when they were signed by the governor, on June 29 and June 30 of 2006, prior to the expiration of the former one-year prescriptive period of La. R.S. 22:629 for these claims.
The language of the 2006 Acts makes plain that the provisions of the 2006 Acts are to apply to claims arising prior to their effective dates, i.e. to claims arising as a result of Hurricanes Katrina and Rita. Our interpretation of the applicability of this legislative action is guided by La. Civ.Code art. 6, which provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is legislative expression to the contrary.
We have previously held that Article 6 requires a two-fold inquiry:
First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.[10]
*322 Morial v. Smith & Wesson Corp., XXXX-XXXX p. 7 (La.4/3/01), 785 So.2d 1, 10, citing Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992).
Here, we find that portions of the acts clearly indicate the legislature's intent that their provisions be applied both retroactively and prospectively for the types of claims described therein. The provisions of newly-enacted R.S. 22:658.3 in Act 739 state in Subsection A that, "[n]otwithstanding any other provision of this Title to the contrary, any person or entity having a claim for damages pursuant to [various types of insurance] and resulting from Hurricane Katrina shall have through September 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract." (Emphasis added). Similarly, Subsection B of that statute provides that, "[n]otwithstanding any other provision of this Title to the contrary, any person or entity having a claim for damages pursuant to [various types of insurance] and resulting from Hurricane Rita shall have through October 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract." (Emphasis added). Act 802 likewise announces an additional, limited exception to the running of prescription "when such loss or damage was caused by or as a result of Hurricane Katrina or Hurricane Rita, or both." See Act 802, Section 2.
Our finding of the legislature's intent to have the provisions of these Acts apply retroactively and prospectively would normally end our inquiry. However, in this matter we must still classify the legislation. Retroactive application of a new rule of substantive law may raise constitutional implications under the Due Process and Contract Clauses of both the state and federal constitutions. Thus, it is necessary for the court to determine whether the Acts constitute substantive legislation. This court has held that "even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights." Morial, XXXX-XXXX p. 10, 785 So.2d at 10; Segura v. Frank, XXXX-XXXX p. 9 (La.1/14/94), 630 So.2d 714, 721.
Acts 739 and 802 of the 2006 Legislative Session concern the prescriptive period for filing claims against insurers for damage caused by Hurricanes Katrina and Rita. Although prescriptive statutes are generally procedural in nature, which would allow retroactive application of these Acts to causes of action that arose prior to their effective dates, the extension of the time period in which to claim damages presented here merits further consideration of the nature of the legislation. Chance v. American Honda Motor Co., Inc., 93-2582 p. 2 (La.4/11/94), 635 So.2d 177, 178; Lott v. Haley, 370 So.2d 521, 523 (La.1979).
*323 In Chance, this court was faced with legislation which, in effect, revived an already prescribed claim. Here, the legislation at issue has the effect of extending a prescriptive period. Our analysis in Chance, finding the nature of the legislation to be substantive, is compelling:
For while the defendant does not acquire anything during the running of the prescriptive period, once the time period has elapsed, the legislature grants the defendant the right to plead the exception of prescription in order to defeat the plaintiff's claim. La.Code Civ. P. arts. 927 & 934. Because the defendant acquires the right to plead the exception of prescription, a change in that right constitutes a substantive change in the law as applied to the defendant.
Id., 93-2582 p. 2, 635 So.2d at 178.
We hold that the 2006 Acts at issue are substantive in nature. We must next determine whether the Acts impair contractual obligations or disturb vested rights such that they must not be applied retroactively. See Segura, XXXX-XXXX p. 17, 630 So.2d at 726. Since this issue is also one of the grounds of unconstitutionality raised by the defendants, we will now analyze the arguments presented by the defendants before this court and in the district court.

Contract Clause
The defendants argue that extension of the prescriptive period in which to file damage claims for damage caused by Hurricanes Katrina and Rita found in Acts 739 and 802 violates the Contract Clauses of the Louisiana and United States Constitutions by substantially impairing the private contractual relationship between authorized property and casualty insurers and their policyholders.
The Contract Clause of the United States Constitution provides that "[n]o state shall . . . pass any . . . law impairing the Obligations of Contracts." United States Constitution Article I, Section 10. Similarly, the Contract Clause of the Louisiana Constitution states that "[n]o bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted." La. Const. Art. 1, Section 23. This court has previously described these constitutional provisions as "virtually identical" and "substantially equivalent." Morial, XXXX-XXXX p. 12, 785 So.2d at 13; Segura, XXXX-XXXX p. 20, 630 So.2d at 728.
Although the language of these constitutional clauses appears unambiguously absolute, "the Contract Clause does not operate to obliterate the police power of the States." Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 241, 98 S.Ct. 2716, 2721, 57 L.Ed.2d 727 (1978).
It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.
Allied Structural Steel, 438 U.S. at 241, 98 S.Ct. at 2721, quoting Manigault v. Springs, 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274 (1905). Thus, the prohibition contained in the Contract Clause "must be accommodated to the inherent power of the state to safeguard the vital interests of its people." Energy Reserves Group, Inc. v. Kansas Power & Light Co., *324 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) (internal citation omitted).
In Board of Comm'rs v. Dept. of Natural Resources, 496 So.2d 281 (La. 1986), this court set forth the appropriate Contract Clause analysis as enunciated by the Supreme Court in Energy Reserves, supra. See Segura, XXXX-XXXX p. 21, 630 So.2d at 729. The standard to be used by reviewing courts is a four-step analysis, as follows:
first, the court must determine whether the state law would, in fact, impair a contractual relationship; second, if an impairment is found, the court must determine whether the impairment is of constitutional dimension; third, if the state regulation constitutes a substantial impairment, the court must determine whether a significant and legitimate public purpose justifies the regulation; finally, if a significant and legitimate public purpose exists, the court must determine whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.
Segura, XXXX-XXXX p. 21, 630 So.2d at 729; Energy Reserves, 459 U.S. at 410-413, 103 S.Ct. at 704-705. We will analyze the effect of the 2006 Acts under this four part test.

1. Impairment of Contractual Relationship
Regarding the first inquiry, we have already determined that application of Act 739 and Act 802 would extend the time period during which policyholders could file damage claims against their insurers for property damage sustained in Hurricanes Katrina and Rita. The defendant insurers will be prohibited from pleading the exception of prescription for those claims filed within the one-year extension of the prescriptive period authorized by the Acts. Thus, we hold that this extension of the prescriptive period in which to file damage claims would, in fact, constitute an impairment of the contractual relationship between the defendant insurers and their policyholders. See Segura, XXXX-XXXX p. 21-22, 630 So.2d at 729.

2. Constitutional Dimension of Impairment
We must next determine whether the impairment is one of constitutional dimension. This court has previously held that "this inquiry requires a reviewing court to determine the severity of the impairment." Segura, XXXX-XXXX p. 22, 630 So.2d at 729. "Minimal alteration of contractual obligations may end the inquiry at its first stage, while severe impairment will push the inquiry to a careful examination of the nature and purpose of the state legislation." Id., XXXX-XXXX p. 22, 630 So.2d at 729, citing Allied Structural Steel, 438 U.S. at 254, 98 S.Ct. at 2727. In order for contractual impairment to be termed "substantial," the impairment need not rise to the level of total destruction of contractual expectations. Energy Reserves, 459 U.S. at 411, 103 S.Ct. at 704. In addition, in determining the extent of the impairment, a reviewing court may also consider "whether the industry the complaining party has entered has been regulated in the past." Id. For, "where a complaining party enters a contractual relationship in a heavily regulated industry, expectations of further regulation of that industry may lessen the severity of a subsequent impairment of that party's contractual rights and obligations." Segura, XXXX-XXXX p. 23, 630 So.2d at 730.
As in Segura, we can measure the severity of the impairment of the defendants' contracts by determining the extent to *325 which the insurers' contractual expectations would be frustrated by operation of the 2006 Acts. Id., XXXX-XXXX p. 23, 630 So.2d at 730. At the time the insurance policies were issued, former R.S. 22:629 provided that claimants had at least one year in which to bring damage claims under the policies. Consistent with the law existing at that time, certain defendant insurers did not undertake the obligation to extend a period of time longer than one year to allow policyholders to file claims from the dates of a damage-causing event.[11] Each insurer reasonably expected that damage claims filed after a one year prescriptive period would be unenforceable due to exceptions of prescription. To that extent, the impairments of the defendant insurers' contractual obligations could be said to be substantial.
On the other hand, this court has previously held that "the Louisiana insurance industry is pervasively regulated." Habeney v. Bellow, XXXX-XXXX p. 1 (La.10/28/94), 645 So.2d 624. In fact, the minimum prescriptive period was already set by statute in the former R.S. 22:629. Thus, a change in the prescriptive period was a legal possibility.[12]See Segura, XXXX-XXXX p. 24, 630 So.2d at 731.
While we find that the contractual obligations of the defendant insurers under the 2006 Acts may be substantially impaired, we also note the fact that state law has traditionally regulated insurance as a matter of public policy, even including the precise procedural mechanism for filing claims at issue herein. On balance, as we found in Segura, the impairments in these cases constitute more than minimal alteration of the insurers' contractual obligations and are therefore of constitutional dimension. Id., XXXX-XXXX p. 25, 630 So.2d at 731. However, we also find that the impairments constitute considerably less than total destruction of the insurers' contractual expectations. Id. Consequently, when we inquire into the public purpose underlying the legislation, we will give considerable deference to the legislature's judgment. Id.

3. Significant and Legitimate Public Purpose
The third inquiry is whether a significant and legitimate public purpose justifies the regulation. As we stated in Segura,
the public purpose requirement is primarily designed to prevent a state from embarking on a policy motivated by a simple desire to escape its financial obligations or to injure others through the repudiation of debts or the destruction of contracts of the denial of means to enforce them.
Id., XXXX-XXXX p. 25, 630 So.2d at 731, citing Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).
*326 In this case, Act 739 and Act 802 were enacted by the Louisiana Legislature in order to protect the health and general welfare of the citizens of this state affected by Hurricanes Katrina and Rita. The best explanation of the public purpose of this legislation is supplied by the legislature itself in Section 1 of Act 802:
The Louisiana Legislature finds that Hurricanes Katrina and Rita created a statewide emergency and inflicted immediate undue and unimaginable hardships on hundreds of thousands of Louisiana citizens, including forced evacuation or rescue, difficulty in finding shelter, multiple relocations, and coping with the death or uncertainty of the whereabouts of loved ones. The legislature further notes that subsequent hardships have included delayed reentry into hurricane-affected areas, massive clean-up and debris removal efforts, the attempted salvage of personal effects, the severity of the damage to homes and businesses and difficulty in determining the extent of the damage, the difficulty of obtaining information regarding rebuilding, the loss of personal legal documents including insurance contracts, the complexity of legal issues, discerning the distinctions between flood insurance, hurricane insurance, and homeowner's insurance and understanding how these types of coverage work together, possible multiple insurance carriers, the limited availability of adjusters and the time constraints on such adjusters in processing the more than one and one-half million claims filed for Hurricane Katrina and Hurricane Rita combined, complex negotiations with insurance companies, and decisions as to whether to enter into mediation offered by the Louisiana Department of Insurance. The legislature further recognizes additional and ongoing emotional and psychological hardships, including the difficulties imposed by remaining separated from family members, facing the devastating loss of life and property, being displaced from one's home, neighborhood, school, church, and community, and post-traumatic stress and depression as evidence by continued mental anguish and related suicides. This uncodified law is enacted to prevent additional hardship to property owners who have already been overwhelmed and daunted by these hardships and have endured so much grief and suffering and who soon will be forced to decide whether to institute a lawsuit to preserve their cause of action, possibly causing unnecessary litigation or compromising ongoing settlement discussions and, as such shall be liberally construed to effect its purposes.
We recognize the inadequacy of words to describe the total devastation of property, community and social structure which are the after-effects of these catastrophic storms. At oral argument, counsel for Allstate agreed with the description that these storms constitute the worst natural disaster to ever have occurred in the United States. Consequently, in the aftermath of the 2005 hurricane season, we find the legislative extension of the prescriptive period for damage claims is based upon a significant and legitimate public purpose.

4. Appropriateness of Adjustment of Contractual Rights and Responsibilities
After finding a significant and legitimate public purpose supporting the legislation, the court must determine whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose *327 justifying the legislation's adoption. "Unless the state itself is a contracting party, ... courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." Segura, XXXX-XXXX p. 26, 630 So.2d at 732.
The contractual relationships impaired in these cases are private ones between defendant insurers and their policyholders. We have determined that, while of constitutional dimension, the substantial impairment is of the type that may be anticipated in this highly regulated industry. We note that the legislature's extension of the prescriptive period for filing claims in these types of insurance cases is limited in both time and scope.[13] The prescriptive period is extended for only one additional year and is limited to certain types of claims arising out of damage caused by Hurricanes Katrina and Rita. Consequently, we find that the measures taken by the legislature in the enactment of the 2006 legislation at issue are both appropriate and reasonable in order to protect the rights of the citizens of Louisiana and their general welfare.
In this context, the court must also address an argument raised by the defendant insurers regarding the State's position as a property owner and property insurance policyholder who may benefit from the extension of time in which to file claims. In addition, the defendant insurers raise the concern that the State, through the state program known as the Louisiana Recovery Authority, will be assigned the remaining rights of policyholders and may benefit from the extension of time in which to pursue these assigned claims.
The Supreme Court has previously considered these arguments, finding that "[w]hen the state is a party to the contract, `complete deference to a legislative assessment of reasonableness and necessity [of the state legislation] is not appropriate because the State's self-interest is at stake.'" Energy Reserves, 459 U.S. at 412 n. 14, 103 S.Ct. at 705 n. 14, quoting United States Trust Co. v. New Jersey, 431 U.S. 1, 26, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977). Even under this stricter standard of review of the public purpose of the legislation, our conclusion that the measures taken by the Louisiana legislature in Acts 739 and 802 were both appropriate and reasonable is not shaken. The State was not providing a benefit to a special interest, including the State itself. The fact that the State is also an affected property owner we find incidental to the scope of the matter at issue. Finally, we note, as was discussed in oral argument, that any recovery by the State through the Louisiana Recovery Authority will not be kept for the State's use, but will be put back into the program for the benefit of the community through grants.
Accordingly, we conclude under the appropriate Contract Clause analysis, application of Acts 2006, Nos. 739 and 802 would violate neither the federal nor the state constitutional prohibitions against impairment of contractual obligations.[14]

*328 Standing

The defendants contend in the district court that the Louisiana Attorney General does not have standing to bring a declaratory judgment action to test the constitutionality of these legislative acts, arguing that proceedings should be brought contradictorily solely between interested persons. We agree with the district court's determination of this issue and find the argument meritless. The legislature authorized the Louisiana Attorney General to seek a declaratory judgment within the very legislation at issue. Section 3 of Act 739 provides:
The attorney general is hereby directed to file suit within ten days of the effective date of this Act seeking declaratory judgment to determine the constitutionality of the provisions of this Act or the constitutionality of Acts 2006, No. [802] that originated as House Bill 1302 or Acts 2006, No. ___ that originated as Senate Bill No. 740, and such suit shall seek to determine the constitutionality of any or all of these Acts.
Thus, the Louisiana Attorney General was authorized to file this declaratory judgment action, seeking a judicial declaration as to the constitutionality of Acts 739 and 802.[15]

Supremacy Clause
The defendants further contend that the Acts are in violation of the Supremacy Clause of the United States Constitution because the extended prescriptive period to file a claim contained in the Acts is an attempt to regulate flood insurance, which is preempted by federal law. Initially, we note that only Act 802 contains a provision regarding "flood insurance policy" as one of the types of insurance for which claims may be instituted within the legislatively extended time period, on or before August 30, 2007 for a claim for damage caused by Hurricane Katrina and on or before September 25, 2007 for a claim for damage caused by Hurricane Rita. There is no allegation of unconstitutionality on Supremacy Clause grounds asserted as to Act 739. Consequently, there is no Supremacy Clause argument which may be asserted as to Act 739.
The United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land. . . ." U.S. Const. art. VI, cl. 2. The complained-of portion of Section 2 of Act 802 provides as follows:
Recognizing the magnitude of the unprecedented destruction caused by Hurricanes Katrina and Rita, the breaches in the levee systems, the widespread and life-altering hardships suffered as a result of the hurricanes and the devastation, and the need for equity and fairness particularly in these trying times, the Louisiana Legislature hereby establishes *329 an additional, limited exception to the running of prescription and, as such, prevents the running of prescription for one year on any claim seeking to recover for loss or damage to property against an insurer on any homeowners' insurance policy, including tenant and condominium policies, personal property insurance policy, commercial property insurance policy or flood insurance policy, on any automobile or fleet policy for loss or damage to an insured's vehicle caused by flood, wind or rain, or on any policy for loss of damage to crop or livestock, when such loss of damage was caused by or as a result of Hurricane Katrina or Hurricane Rita, or both. (Emphasis added)
The district court found that, since the National Flood Insurance Program deals only with claims arising from flood damage, there was no need to discuss the possibility of any federal preemption because there was no showing at this time that any claim resulting from flood damage would fall outside of the one-year prescriptive period set by Congress.[16]
Our reading of Act 802 leads us to the conclusion that no Supremacy Clause violation has occurred because the Louisiana Legislature in Act 802 made no attempt to regulate the federally-regulated National Flood Insurance Program. All parties agree that the National Flood Insurance Program is federally regulated through the National Flood Insurance Act. See Title 42 U.S.C. §§ 4001-4129. Although the Louisiana Attorney General argues that the portion of Act 802 referring to "flood insurance policies" may be severed out of the legislation,[17] we do not find that action to be necessary here.
In construing statutes, "courts must endeavor to give an interpretation that will give them effectiveness and purpose, rather than one which makes them meaningless." State v. Cunningham, 2004-2200 p. 8-9 (La.6/13/05), 903 So.2d 1110, 1116; State v. Union Tank Car Company, 439 So.2d 377, 382 (La. 1983). Thus, "if there are two ways to interpret a statute, courts are to interpret the statute in such a manner to uphold the constitutionality." Cunningham, 2004-2200 p. 9, 903 So.2d at 1116; State v. Interiano, XXXX-XXXX p. 4 (La.2/13/04), 868 So.2d 9, 13.
*330 Keeping these rules of construction in mind, we find that the phrase "or flood insurance policy," can be read to reference other types of flood insurance policies other than the federally-regulated flood insurance program. For any type of flood insurance other than the federally-regulated flood insurance, the Legislature, through Act 802, provides an exception to the running of prescription for these types of insurance which are subject to state regulation. We do not find that the Supremacy Clause of the United States Constitution is implicated by Act 802.

Procedural Due Process
In the district court, the defendants objected to these proceedings as being violative of their rights to procedural due process. Specifically, the defendants claim they were rushed in their preparation due to the expedited hearing schedule ordered by this court. The district court found this contention to be meritless, noting that the defendants had ample notice of the proceedings because the Acts themselves put property and casualty insurance carriers on notice of this inevitable proceeding by the Attorney General.
We agree with the district court's finding. The legislation at issue became effective, at the latest, on June 30, 2006. The declaratory judgment action was perfected on all of the named defendants more than a month ago. All of the parties were on notice of the substance of the issues to be considered. The fact that the defendant insurers attempted to remove the matter to federal court, and the matter was remanded to state court, does not change the fact that all of the parties have had adequate and substantial notice of the legal issues involved in this matter. In addition, the parties were aware of the legislature's charge to suspend delays and rules to the extent practicable in order to facilitate the expedient resolution of this matter. We find that there has been no violation of the defendants' due process rights in the presentation and resolution of this matter.[18]

DECREE
For the foregoing reasons, we affirm the judgment of the district court, finding constitutional 2006 Acts, Nos. 739 and 802. In keeping with the expedited nature of this proceeding, we order that an application seeking rehearing of this matter must be filed no later than 12:00 noon on Saturday, August 26, 2006.
NOTES
[1] Executive Order KBB 2005-32, signed on September 6, 2005, provided in pertinent part, that "[a]ll deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005, including, but not limited to, any such deadlines set for in the following:(A) Louisiana Civil Code; (B) Louisiana Code of Civil Procedure; (C) La. R.S. Title 9, Civil Code Ancillaries; (D) La. R.S. Title 13, Courts and Judicial Procedure; (E) La. R.S. Title 23, Chapter 10, Worker's Compensation; (F) La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and (G) La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice." This order applied retroactively from Monday, August 29, 2005 [the date that Hurricane Katrina made landfall], through Sunday, September 25, 2005, "unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time."

Executive Order KBB 2005-48, signed on September 23, 2005, extended Executive Order KBB 2005-32 for an additional thirty days and specified that the suspension of laws authorized therein would apply statewide "except to the extent that the suspension of deadlines in legal proceedings may hereafter be shortened or lifted, in whole or in part, by an order issued by the Louisiana Supreme Court acting in accordance with the power vested pursuant to Article V of the Constitution."
Executive Order KBB 2005-67, signed on October 19, 2005 [after Hurricane Rita made landfall], suspended liberative prescription and peremptive periods until at least Friday, November 25, 2005. In addition, this order specifically provided for the suspension of deadlines in legal proceedings in the parishes affected by Hurricane Rita and referenced particular types of legal proceedings that were otherwise subject to rules promulgated by the Louisiana Supreme Court.
[2] Section 3 of Act 739 provides: "The attorney general is hereby directed to file suit within ten days of the effective date of this Act seeking declaratory judgment to determine the constitutionality of the provisions of this Act or the constitutionality of Acts 2006, No. ___ that originated as House Bill 1302 or Acts 2006, No. ___ that originated as Senate Bill 740, and such suit shall seek to determine the constitutionality of any or all of these Acts." Similarly, Section 3 of Act 802 provides that any domiciliary in this state may institute a declaratory judgment action in the 19th Judicial District Court to determine the constitutionality of the provisions of these Acts. The legislature specifically found that cumulation of any actions filed pursuit to this Section was permissible and urged the 19th Judicial District Court, the First Circuit Court of Appeal, if applicable, and the Louisiana Supreme Court to minimize all unnecessary delays in determining the issue.
[3] The record contains a motion to dismiss defendant insurers from suit filed on July 17, 2006. R., p. 108-109. In addition, the State's brief asserts that further motions to dismiss were filed on August 17, 2006 and August 22, 2006. Brief of Louisiana Attorney General, p. 2-3. At oral argument, the parties agreed that the only insurers remaining in the action are the three listed above.

These motions to dismiss were premised upon stipulations filed by the other property and casualty insurance carriers authorized and licensed to do business in the state which provided that they would voluntarily abide by the provisions of the 2006 Acts. These stipulations were provided pursuant to Directive 199 of the Louisiana Commissioner of Insurance, which contained a mandatory requirement to extend the prescriptive period for Louisiana insureds to file suit or legal action for recovery of damages caused by Hurricane Katrina and/or Hurricane Rita. See Brief of Louisiana Attorney General, Exhibit 3.
[4] This court's order of August 22, 2006 provided as follows:

Writ Granted. This matter is remanded to the district court, which is ordered to set the case for evidentiary hearing no later than Wednesday, August 23, 2006. The district court is to render a decision on the constitutional issue on that date. Irrespective of the ruling below, any party may apply directly to this court for review of the district court's decision by 10:00 a.m., Thursday, August 24, 2006. Should this matter return to this court, a hearing shall be held on Friday, August 25, 2006, at 9:30 a.m. The parties should file briefs in this court by 4:00 p.m. on Thursday, August 24, 2006.
[5] In its brief to this court, USAA argues that this court does not have jurisdiction to review the district court's ruling. Since the district court found the Acts at issue to be constitutional, and the review was sought in this court by the Louisiana Attorney General, USAA asserts that any pronouncements in this court would be tantamount to a prohibited advisory opinion. This court assumed jurisdiction to determine the constitutionality of these Acts on August 22, 2006, remanding to the district court and ordering that a hearing be held. Irrespective of what the district court ultimately ruled, this court retained its jurisdiction to review the matter, setting forth the expedited briefing schedule and time period for oral argument. The fact that a hearing was ordered in the district court does not negate the fact that the court retained jurisdiction in order to review that ruling.
[6] La. R.S. 22:6(10), (11), (12) and (13) refers to the following classifications of insurance: fire and extended coverage, R.S. 22:6(10); steam boiler and sprinkler leakage, R.S. 22:6(11); crop and live stock, R.S. 22:6(12); and marine and transportation (inland marine), R.S. 22:6(13).
[7] Section 4 of Act 739 provides in pertinent part that the Act would become effective upon the governor's signature.
[8] Section 4 of Act 802 provides in pertinent part that the Act would be come effective upon the governor's signature.
[9] For insurance contracts that provided the minimum allowable twelve month filing period.
[10] This court has previously defined these different types of laws as follows:

Substantive laws establish new rules, rights and duties or change existing ones. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 817 (La.1992); Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331, 1339 (La.1978). Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Graham v. Sequoya Corp., 478 So.2d 1223, 1226 (La. 1985); Terrebonne v. South Lafourche Tidal Control Levee Dist., 445 So.2d 1221, 1224 (La.1984). Interpretive laws merely establish the meaning the interpreted statute had from the time of its enactment. St. Paul Fire & Marine, 609 So.2d at 817; Ardoin, 360 So.2d at 1339.
Segura v. Frank, 93-1271 p. 12 (La.1/14/94), 630 So.2d 714, 723.
[11] The court is aware that some insurance policies provide for a longer period of time than one year to file a claim. At oral argument, counsel for Allstate theorized that this fact may be one of the reasons that other property and casualty insurance carriers signed the stipulations pursuant to Directive 199. As discussed at oral argument, the court's determination of the constitutionality or unconstitutionality of the Acts at issue will impact only the three property and casualty insurance carriers presently before the court-all others authorized and licensed to do business in the State of Louisiana have voluntarily agreed to an extension of time in which to file claims.
[12] We note that in both brief and oral argument, there was a discussion that the states neighboring Louisiana all have time periods greater than one year in which to file similar claims. Thus, there apparently is no nationwide standard for the time period in which to file a property or casualty insurance claim.
[13] The defendants argue that the Acts at issue were unnecessary as Louisiana law already contains the means for persons prevented from filing suit to avoid dismissal of their claims due to prescription. Specifically, the defendants point out that the doctrine of contra non valentem applies to prevent the running of liberative prescription where, in fact and for good cause, a plaintiff is unable to exercise his cause of action when it accrues. As was discussed in oral argument, determinations of whether contra non valentem applies generally proceeds on an individual, case-by-case basis. In order to avoid mass confusion and an increase in filings in our courts, the Legislature addressed this significant public concern in an appropriate manner.
[14] Insofar as the defendant insurers claim imposition of the extended prescriptive period violates constitutional due process concerns, our conclusion that no unconstitutional violation occurred would be the same because the tests are similar. The Supreme Court has held "`[t]he retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process': a legitimate legislative purpose furthered by rational means." General Motors Corp. v. Romein, 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992), citing Pension Benefit Guaranty Corporation v. R.A. Gray & Co., 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984).
[15] To the extent that the defendant insurers argue the Louisiana Attorney General does not have standing to seek review of the district court's ruling in this court, under the argument that the State was the prevailing party in the district court, we reassert that this court retained jurisdiction to determine this matter in its August 22, 2006 order. See Footnote 5, infra.
[16] Although not stated in her reasons for judgment, we believe the district court's ruling in this regard was premised on Title 42 U.S.C. U.S.C. § 4053, which provides for the adjustment and payment of claims of flood insurance policies, judicial review, limitations on those actions and the applicable jurisdiction, as follows:

The insurance companies and other insurers which form, associate, or otherwise join together in the pool under this part may adjust and pay all claims for proved and approved losses covered by flood insurance in accordance with the provisions of this chapter and, upon the disallowance by any such company or other insurer of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance of the claim, may institute an action on such claim against such company or other insurer in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy. (Emphasis added).
[17] La. R.S. 24:175(A) provides: "Unless otherwise specifically provided therein, the provisions of each act of the legislature are severable, whether or not a provision to that effect is included in the act. If any provision or item of an act, or the application thereof, is held invalid, such invalidity shall not affect other provisions, items, or applications of the act which can be given effect without the invalid provision, item, or application."
[18] The only substantive detriment mentioned by counsel for Allstate during oral argument in this court was the fact that the insurer had not been able to compile information to support its argument that the rates of their policies were based on the one year prescriptive period for filing claims. However, we have held that the impairment of contract which might occur is justified by the significant and legitimate public purpose behind the 2006 Acts at issue.