# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #014

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **22nd day of March, 2024** are as follows:

**BY Genovese, J.:**

2023-CC-01194     DOUGLAS BIENVENU, ET AL. VS. DEFENDANT 1 AND DEFENDANT 2 #87184 C/W JOHN DOE, ET AL. VS. DEFENDANT 1 AND DEFENDANT 2 #87515 (Parish of St. Martin)

REVERSED IN PART, VACATED IN PART, AND REMANDED. SEE OPINION.

Weimer, C.J., dissents and assigns reasons.

Crichton, J., additionally concurs and assigns reasons.

Crain, J., dissents and assigns reasons.

McCallum, J., dissents.

Griffin, J., concurs in the result and assigns reasons and concurs for the reasons assigned by Justice Crichton.

# SUPREME COURT OF LOUISIANA

# No. 2023-CC-01194

# DOUGLAS BIENVENU, ET AL.

# VS.

# DEFENDANT 1 AND DEFENDANT 2 #87184

# C/W

# JOHN DOE, ET AL.

# VS.

# DEFENDANT 1 AND DEFENDANT 2 #87515

On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin

**GENOVESE, J.**

We granted this application pursuant to our supervisory jurisdiction to consider whether La. R.S. 9:2800.9, which revives certain prescribed child sex abuse claims for a limited three-year period, conflicts with the due process protections set forth in Article I, Section 2 of the Louisiana Constitution. For the reasons that follow, we are constrained to find the statutory enactment is contrary to the due process protections enshrined in our constitution and must yield to that supreme law.

Accordingly, we reverse in part, and vacate in part, finding the trial court erred in overruling the exception of prescription to the extent it found the statutory enactment to be constitutional. However, given that the trial court deferred ruling on the issue of whether prescription was interrupted and/or suspended, particularly with reference to the doctrine of contra non valentem, we remand.

# FACTS AND PROCEDURAL HISTORY

For purposes of the issue before us, the facts are largely undisputed. In September of 2018, Douglas Bienvenu, and several other plaintiffs (collectively, "plaintiffs"), filed suit against The Society of Roman Catholic Church, Diocese of Lafayette, and St. Martin De Tours Catholic Church ("defendants"). Essentially, plaintiffs alleged they were sexually molested by a Roman Catholic priest at various times between 1971 and 1979. At the time of the alleged abuse, plaintiffs ranged in ages from eight to fourteen.

Defendants responded by filing several exceptions, including a peremptory exception of prescription, arguing that plaintiffs' claims were subject to the general one-year liberative prescriptive period for delictual actions under former La. Civ. Code art. 3536(1).

While the suit was pending, the legislature amended La. R.S. 9:2800.9 through 2021 La. Acts No. 322 ("Act 322"). As amended, the statute provides, in pertinent part:

> A. (1) An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring[,] does not prescribe.
>
> (2) An action against a person convicted of a crime against the child does not prescribe and may be filed at any time following conviction. "Crime against the child" has the same meaning as provided in Children's Code Article 603.

The effective date of Act 322 was June 14, 2021. However, Section 2 of the Act provides:

> Section 2. For a period of three years following the effective date of this Act, any party whose action under R.S. 9:2800.9 was barred by liberative prescription prior to the effective date of this Act shall be permitted to file an action under R.S. 9:2800.9 against a party whose alleged actions are the subject of R.S. 9:2800.9. It is the intent of the legislature to revive for a period of three years any claim against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act.

2

Following the 2021 amendment, defendants filed a supplemental exception of prescription. Defendants asserted that La. R.S. 9:2800.9, as amended by the revival provisions, was not applicable, nor was it constitutional.

Approximately one year later, the legislature again amended La. R.S. 9:2800.9 through 2022 La. Acts. No. 386, §2 ("Act 386"), which became effective on June 10, 2022. The 2022 act specifically indicated it was the intent of the legislature to revive any cause of action related to the sexual abuse of a minor that previously prescribed under **any** Louisiana prescriptive period. It provides:

> Section 2. Any person whose cause of action related to sexual abuse of a minor was barred by liberative prescription shall be permitted to file an action under R.S. 9:2800.9 on or before June 14, 2024. **It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period.** [emphasis added].

Plaintiffs opposed defendants' exception of prescription, citing Act 322 as interpreted by Act 386. Furthermore, plaintiffs argued the statute, as amended, was constitutional.[1]

After a hearing,[2] the trial court overruled defendants' exception of prescription. In oral reasons for judgment, the trial court found that the legislature clearly expressed an intent to apply the statute retroactively to revive prescribed claims, narrowly tailoring the relief allowed to child abuse cases.[3]

---

[1] The parties agreed to bifurcate the constitutional issue from the general prescriptive issues; therefore, the parties proceeded to a hearing only on the constitutional issue.

[2] Significantly, the hearing on the exception of prescription occurred after the enactment of Act 386. At the hearing, Defendants admitted that Act 386 clarified the 2021 amendment to La. R.S. 9:2800.9. Thus, they admitted that "the issue over 'applicability' has now been rendered moot by additional changes to the law through the 2022 Legislative Session." As a result, they submitted that the exception was limited to the constitutionality of the statute only.

[3] The trial court stated:

> Especially in light of the Legislature's recent actions[,] … it's the clear and unambiguous intent of the Legislature that this statute apply to cases such as the one before the Court now. And this Court is of the opinion that that was the Legislature[']s intention[,] and that the statute as enacted by the Legislature is clear

3

Defendants sought supervisory review of the trial court's judgment. The court of appeal denied writs in a split decision, with one judge dissenting.[4]

Upon defendants' application, we issued a writ of review, directing the parties to provide briefing and argument. *Bienvenu v. Defendant 1*, 23-01194 (La. 12/5/23), 373 So.3d 709. The sole issue presented for our review is whether the retroactivity provisions of Act 322, as interpreted by Act 386, are constitutional.[5]

## DISCUSSION

*General Principles of Retroactivity*

We begin our inquiry with Article 6 of the Civil Code, which sets forth the general rules for determining prospective and retroactive application of laws:

> In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.

In *Manuel v. Louisiana Sheriff's Risk Mgmt. Fund*, 95-0406, p. 4 (La. 11/27/95), 664 So.2d 81, 84, we recognized the limitation of retroactivity is a basic principle of most legal systems, explaining:

> The principle that laws are to have a prospective and not retroactive effect is a basic principle of most legal systems. Planiol notes that France, from which Louisiana inherited its Civil Code, adopted this principle because:
>
> > There would be no security for private persons if their rights, their fortunes, their personal status, the effects of

---

and unequivocal and drafted in such a way that it is specifically narrowly tailored to address these cases.

[4] Gremillion, J., dissented and "would grant for the reasons assigned by Judge Bradberry dissenting in *Doe v. The Society of the Roman Catholic Church of the Diocese of Lafayette*, 22-120, p. __ (La. App. 3 Cir. 8/17/23), __ So.3d ___. See also *Lousteau v. Congregation of Holy Cross Southern Province, Inc.*, 2022 WL 2065539 (E.D. La. 2022)."

[5] Although defendants assert three assignments of error, we limit our review to whether the trial court erred in overruling defendants' exception of prescription, finding that La. R.S. 9:2800.9, as amended by the revival provisions, is constitutional. Defendants' remaining assignments of error are related to the applicability of the revival provisions to plaintiffs' claims. As discussed, at the hearing on the exception, defendants admitted the recently enacted Act 386 applied, waived their applicability arguments, and limited their argument to the constitutionality issue. Thus, these assignments of error are not preserved for review. *State v. Williams*, 02-1030 (La. 10/15/02), 830 So.2d 984, 988 (the general rule established by this Court is that issues not submitted [or waived] before the trial court for decision will not be considered by the appellate court on appeal).

4

their acts and of their contracts, could be questioned or modified or suppressed at any moment because the law-maker had changed his mind.

1 M. Planiol, TREATISE ON THE CIVIL LAW, § 240 (La.St. L. Inst.Trans.1959).

In *Cole v. Celotex Corp.*, 599 So.2d 1058, 1063 (La. 1992), we explained that La. Civ. Code art. 6 requires that we engage in a two-fold inquiry. First, we must ascertain whether, in the enactment, the legislature expressed its intent regarding retrospective or prospective application. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive. *Id.*

This basic inquiry is easily satisfied in the instant case. Act 386 specifically provides, "[i]t is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period." This language clearly demonstrates the legislature intended to give retroactive application to the law by reviving previously prescribed claims. Because plaintiffs' action was pending, *i.e.,* "subject to judicial scrutiny,"[6] on the effective date of Act 386, we conclude that plaintiffs' claims are among those that the legislature intended to give retroactive effect, under amended La. R.S. 9:2800.9, until June 14, 2024.

*Constitutional Limitations on Retroactivity*

Despite our finding of clear legislative intent to impose a retroactive application, our inquiry is not at an end. Rather, we must consider the constitutional implications of retroactivity. In *Morial v. Smith & Wesson Corp.*, 00-1132 (La. 4/3/01), 785 So.2d 1, 10, we explained:

> [B]ecause the principle has constitutional implications under the Due Process and Contract Clauses of both the United States and Louisiana Constitutions, **even where the legislature has expressed its intent to give a law retroactive effect, that law may not be applied**

---

[6] *See Segura v. Frank*, 93-1271, p. 19 (La.1/14/94), 630 So.2d 714, 727.

**retroactively if it would impair contractual obligations or disturb vested rights**. *See Keith v. U.S. Fidelity & Guar.*, 96-2075, pp. [sic] (La.5/9/97), 694 So.2d 180, 183; *Rousselle v. Plaquemines Parish Sch. Bd.*, 93–1916, p. 11 (La.2/28/94), 633 So.2d 1235, 1244; *Segura v. Frank*, 93 1271, pp. 8–9 (La.1/14/94), 630 So.2d 714, 721; *St. Paul Fire & Marine*, 609 So.2d at 816 n. 11; *Lott v. Haley*, 370 So.2d 521, 523 (La.1979). See also 2 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE, § 10 (3d ed. 1991) ("Retroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligation of contracts or in divestiture of vested rights."). [emphasis added].

Given these constitutional limitations, the issue presented by this case turns on whether the revival provisions operate to disturb defendants' vested rights. Defendants argue that the revival provisions are unconstitutional under Art. I, Section 2 of the Louisiana Constitution, which provides: "No person shall be deprived of life, liberty, or **property**, **except by due process of law.**" [emphasis added]. In particular, they assert that accrued prescription extinguishes civil obligations; therefore, their right to plead accrued prescription is a vested property right that cannot be divested by the legislature.

Accordingly, we now turn to a discussion of vested rights.

*Analysis of Vested Rights*

A "vested" right "must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit . . . does not constitute a vested right." *Ebinger v. Venus Const. Corp.*, 10-2516, pp. 8-9, 65 So.3d 1279, 1286 (quoting *Sawicki v. K/S Stavanger Prince*, 01-0528, p. 10 (La. 12/07/01), 802 So.2d 598, 604) (internal quotation and citation omitted). Thus, a right becomes "vested" "when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest."[7] *Id.*

---

[7] "[V]ested right" is defined as an unconditional right; it is a: "[r]ight accrued to possessor with no conditions." Black's Online Law Dictionary (2nd ed. 2024), https://thelawdictionary.org/. "Vested": is defined as: "[a]ccrued; fixed; settled; absolute; having the character or giving the rights of absolute ownership; not contingent; not subject to be defeated by a condition precedent."

6

To satisfy this definition, defendants must establish that their interest in accrued prescription has become an absolute property right. In general, La. Civ. Code art. 3447 defines liberative prescription as "a mode of barring actions as a result of inaction for a period of time." *See also*, G. Baudier–Lacantinerie & A. Tissier, TRAITE THEORIQUE ET PRATIQUE DE DROIT CIVIL, No. 25 (4th ed.1924), reprinted in 5 CIVIL LAW TRANSLATIONS at 15 (La. St. Law Inst. Trans.1972) (The primary basis for prescription is to promote social and legal stability.) *Id.*, No. 27, at 16-17. Unlike peremption, which operates to destroy or extinguish the cause of action itself, liberative prescription bars the enforcement of a right by action. *Borel v. Young*, 07-0419, p. 8 (La. 11/27/07), 989 So.2d 42, 49, *on reh'g* (7/01/08). Because prescription can be renounced, interrupted, or suspended, it is an "inchoate [incomplete] right." *Id.*, 07-0419, pp. 8-9, 989 So.2d at 49. Prescription is also subject to suspension under the doctrine of contra non valentem. *Wimberly v. Gatch*, 635 So.2d 206, 211 (La. 1994). However, once prescription runs, or accrues, it cannot be interrupted or suspended. *Geiger v. State ex rel. Dept. of Health and Hosps.*, 01-2206, p. 5 (La. 4/12/02), 815 So.2d 80, 83 (citing *Rizer v. American Sur. & Fid. Ins. Co.,* 95-1200, p. 6 (La. 3/8/96), 669 So.2d 387, 390-91).

While the inchoate nature of the right to plead prescription lends to the argument that a liberative prescription defense is not a vested right, because it is incomplete, once liberative prescription accrues, prescription loses its inchoate nature and becomes an accrued, vested right. As explained in Comment (b) to La. Civ. Code art. 3447, "liberative prescription is not merely a mode of discharging debts; **it is a mode of extinguishing claims**." (emphasis added). *See also* La. Civ.

---

*Id.* "Accrued right" is "[t]he right that has been established and is backed by a legal authority and can demand a remedy to wrongs that have been committed." *Id.*

7

Code art. 1762 (explaining that a natural obligation remains "[w]hen a civil obligation has been extinguished by prescription. . . .").

Once accrued, prescription may only be renounced by a defendant. *See* La. Civ. Code art. 3449. A prescribed claim is no longer subject to interruption or suspension. Likewise, contra non valentem does not apply to a prescribed claim because it only applies to suspend prescription. Explaining the civilian principles surrounding accrued prescription, Planiol instructs:

> When a law modifies the duration of prescription, either to lengthen it or shorten it, prescriptions already accrued are not disturbed by it, but those which are running are affected by the change.

1 Marcel Planiol, Treatise on the Civil Law, § 243 (La. State Law Inst. trans. 1959) (12th ed. 1939); *See also*, *Lousteau v. Congregation of Holy Cross S. Province, Inc.*, No. CV 21-1457, 2022 WL 2065539, at *16 (E.D. La. June 8, 2022), *vacated on other grounds and remanded sub nom.*, *Lousteau v. Holy Cross Coll., Inc.*, 81 F.4th 437 (5th Cir. 2023),[8] where the federal district court recognized that once liberative prescription accrues, only a natural, unenforceable obligation remains; therefore, it held the right to plead accrued prescription is a completed, vested right because interruption and suspension no longer apply, and only a defendant can waive it. "[A]side from the increase in patrimony attributable to the civil obligation itself being unenforceable, once liberative prescription accrues[,] a defendant is no longer faced with expending his resources defending the [merits of the] claim, which constitutes an additional increase in patrimony." *Id*. at *16.[9]

---

[8] Though *Lousteau* is not controlling, we find the detailed legal analysis to be accurate and compelling.

[9] The *Lousteau* Court further explained the premise behind the finality of accrued prescription by contrasting it with unaccrued prescription, stating:

> So for instance, a defendant may be just days away from the accrual of liberative prescription when the Legislature can move the "finish line" farther away by adding additional time to the prescriptive period or even make the claim imprescribable. Before liberative prescription has accrued, the defendant has no right to have the prescriptive period that was in effect when the cause of action arose continue to govern, regardless of his expectations.

The definite nature of accrued prescription has been repeatedly recognized in our jurisprudence, which makes it clear that, unlike statutes of limitations at common law, under civilian principles, prescriptive periods that have accrued act to extinguish the civil obligation to which they apply. *Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143, p. 7 (La. 5/21/08), 983 So.2d 84, 89 (citing *Louisiana Health Servs. and Indem. Co. v. McNamara*, 561 So.2d 712, 718 (La. 1990)).[10] Once a claim prescribes, the debt is extinguished and a defendant's right to plead prescription is unconditional or vested. Thus, when a party acquires the right to plead the defense of accrued prescription, his right becomes a vested property right protected by constitutional due process guarantees. *See Falgout v. Dealers Truck Equip. Co.*, 98-3510, p. 12 (La. 10/19/99), 748 So.2d 399, 407; *Bourgeois v. A.P. Green Indus., Inc.*, 00-1528, p. 10 (La. 4/3/01), 783 So.2d 1251, 1259; and *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 25 (La. 7/1/08), 998 So.2d 16, 34 ("When a party acquires a right, either to sue for a cause of action **or to defend himself against one**, that right becomes a vested property right and is protected by … due process guarantees.") (emphasis added).[11]

---

*Lousteau*, 2022 WL 2065539, at *12.

[10] In *McNamara*, the Court explained that the right to plead prescription in defense to a claim on the obligation itself is "**property** that cannot be taken from [the defendant]." *Id.* (emphasis added). It further explained that the accrual of prescription is unlike statutes of limitation at common law, which are merely procedural bars to the enforcement of obligations. *Id.* Civilian prescriptive periods extinguish the civil obligation to which they apply. *Id.* In such circumstances, the patrimony of the obligor is increased when a claim prescribes. *Id.*

[11] Notably, the *Lousteau* Court recognized that this Court has emphatically rejected the proposition that the legislature has the authority to revive prescribed claims, stating:

> The notion that it would be constitutionally permissible for the Legislature to revive a prescribed cause of action has been unequivocally rejected by the Louisiana Supreme Court on several occasions, albeit often in dicta. *See Hall v. Hall*, 516 So. 2d 119, 120 (La. 1987) (per curiam); *Bouterie v. Crane*, 616 So. 2d 657, 664 n.15 (La. 1993) (citing *Hall*, 516 So. 2d at 119); *Falgout v. Dealers Truck Equip. Co.*, 748 So. 2d 399, 407 (La. 1999).

In *Elevating Boats, Inc. v. St. Bernard Par.*, 00-3518 (La. 9/05/01), 795 So.2d 1153 (La. 2001), *overruled on other grounds*, *Anthony Crane Rental, L.P. v. Fruge*, 03-115, (La. 10/21/03), 859 So.2d 631, for example, this Court explained why a cause of action cannot be revived once liberative prescription has accrued:

> [A]fter the prescriptive period on an obligation has run, an obligor gains the right to plead prescription. In such a situation, that right to plead prescription has already accrued and application of a lengthened prescriptive period to revive the obligation, and effectively remove the right to plead prescription, would "modify or suppress the effects of a right already acquired." **Thus, we have noted that the Legislature is without the authority to revive a prescribed claim**. [emphasis added]

*Id.,* pp. 14-15, 795 So.2d at 1163-64 (citing 1 Marcel Planiol, Treatise on the Civil Law, § 243 (La. State Law Inst. trans. 1959)) (12th ed. 1939); *Bouterie*, 616 So.2d 657, 664 n. 15 (La. 1993);[12] *Hall*, 516 So.2d at 120.[13] (emphasis both in original and added). *See also Goddard's Heirs v. Urquhart*, 6 La. 659, 673-74 (La. 1834) ("[W]hen a new law alters the period of prescription, whether it makes it shorter or longer[,] the time which elapsed before the change is to be reckoned according to the former law and vice versa.").

Similarly, this Court has long protected a plaintiff's vested right to sue on an accrued cause of action. More specifically, in *Lott v. Haley*, this Court recognized that the legislature cannot retroactively amend a prescriptive period to eliminate a plaintiff's vested cause of action, without providing a grace period for those affected to assert their rights. *Id.*, 370 So.2d 521, 524 (La. 1979).[14] Likewise, we find that

---

[12] In a footnote in *Bouterie*, this Court pointed out that the plaintiff could not benefit from amended legislation "because it could not operate to retroactively revive an already prescribed cause of action." *Id*.

[13] In *Hall*, this Court specifically found that newly enacted legislation cannot revive an already prescribed claim for sexual abuse of a minor. 516 So.2d at 120.

[14] In *Lott*, 370 So.2d at 524, this Court stated:

> [I]n the instant case, La.R.S. 9:5628 operates to eliminate plaintiff's vested right to sue on his pre-existing cause of action without providing a reasonable period following its enactment to assert his claim. Absent such a provision, we conclude that La.R.S. 9:5628 cannot be retroactively applied in the instant case because to do so would divest plaintiff of his vested right in his cause of action in violation of the due process guarantees under the state and federal constitutions.

10

the right to present a prescription defense which arises when a case is prescribed is as equally unconditional and concomitant to the right to bring the suit itself.

We also note our determination that the defense of accrued prescription is a vested right is consistent with decisions reached by courts in many of our sister states. *See, e.g., Wiley v. Roof*, 641 So.2d 66, 68-69 (Fla. 1994) ("Once an action is barred, a property right to be free from a claim has accrued."); *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 270 (Ala. 1981) ("Once an action is barred by a statute of limitations in existence at the time of commencement of the action, rights vest in the limitations defense which cannot be destroyed by subsequent legislative act. . . ."); *Jefferson Cty. Dep't of Soc. Servs. v. D. A. G.*, 199 Colo. 315, 318, 607 P.2d 1004, 1006 (1980) ("Where a statute of limitations has run and the bar attached, 'the right to plead it as a defense is a vested right which cannot be taken away or impaired by subsequent legislation.'") (citing *Willoughby v. George*, 5 Colo. 80, 82 (1879); *See also Waller v. Pittsburgh Corning Corp.*, 742 F.Supp. 581, 583 (D. Kan. 1990), *aff'd*, 946 F.2d 1514 (10th Cir. 1991) (explaining that "[m]ost of the state courts addressing the issue have held that the legislation which attempts to revive claims that have been previously time barred impermissibly interferes with vested rights of the defendant, and thus violates due process" and noting "the passing of the limitations period creates a vested right of defense in the defendant, which cannot be removed by subsequent legislative action expanding the limitations period.").

Nonetheless, plaintiffs assert that even if defendants have a vested right in pleading prescription, that right is not superior to other property rights. Therefore, a substantive due process analysis considering the state's police power is required. In support, they cite to *State v. All Prop. and Cas. Ins. Carriers Authorized and Licensed To Do Business In State*, 06-2030 (La. 8/25/06), 937 So.2d 313, where this Court upheld legislation that extended the prescriptive periods for insurance claims arising from Hurricanes Katrina and Rita, rejecting claims that the legislation

11

unconstitutionally impaired existing contractual provisions of insurance policies regarding the time-period in which to bring a claim. This Court further adopted the federal "contract clause" analysis, determining that such impairment was necessary to accommodate the state's inherent police power to safeguard the vital interests of the public in recovering from the catastrophic effects of the hurricanes. *Id.*, 06-2030, pp. 13-14, 937 So.2d at 323-24.

We find *All Property and Cas. Ins.* to be inapposite. In particular, the case did not concern a constitutional due process claim, nor did it explicitly discuss the authority of the legislature to revive an already prescribed claim. This is so because the legislature extended the prescriptive period *before* prescription on the hurricane claims had run. Moreover, as later recognized by this Court, "the Louisiana insurance industry is pervasively regulated, and because the 'minimum prescriptive period was already set by statute; … a change in the prescriptive period was a legal possibility.'" *Taranto v. Louisiana Citizens Prop. Ins. Corp.*, 10-0105, p. 20 (La. 2011), 62 So.3d 721, 734 (citing *All Prop. and Cas. Ins. Carriers*, 06-2030 at p. 16, 937 So.2d at 325).

Further, in *Burmaster v. Plaquemines Par. Gov't*, rendered after *All Property and Cas. Ins.*, we clarified that legislative enactments cannot operate retroactively to divest litigants of vested rights that accrued prior to the effective date of the enactment. *Id.*, 07-2432, p. 21, 982 So.2d at 810-811. Believing such rights to be paramount and fundamental, the *Burmaster* Court refused to adopt a substantive due process or police power analysis, highlighting the fact that "whether a legislative enactment is rationally related to a legitimate government purpose or was made under the police power of the state is an important consideration when a court reviews newly-enacted 'social or economic regulation.'" *Id.*, 07-2432, pp. 22-23, 982 So.2d at 811-12. (quoting *Progressive Sec. Ins. Co. v. Foster*, 97-2985, p. 22 (La. 4/23/98), 711 So.2d 675, 688). Specifically, this Court stated:

12

[A] review of this court's decisions in *Austin*, *Bourgeois II*, and the cases they rely on, indicates that consideration of whether a legislative enactment qualifies as a legitimate exercise of police power is not one of the factors considered by this court in cases involving the retroactive application of newly adopted statutes to divest plaintiffs of vested rights. Instead, our decision in *Bourgeois II* is based primarily on the principle that "[r]etroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligations of contracts or in divesture of vested rights" and principles derived therefrom. *Bourgeois II*, 00–1528 at 7, 783 So.2d at 1257 (quoting Yiannopoulos, *Louisiana Civil Law Treatise*, § 10 (3d ed.1991)); *see also Austin*, 01-1598 at 11, 824 So.2d at 1145. This court has consistently found that "statutes enacted after the acquisition of . . . a vested property right . . . . cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties," *Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic*, 470 So.2d 878, 879 (La.1985), without considering whether the adoption of the statute was within the state's police power.

*Id*., 07-2432, p. 23, 982 So.2d at 812.[15]

---

[15] It has been suggested that Art. I, §2 of the constitution does not absolutely prohibit the state from depriving a party of vested property rights, but instead recognizes a right of procedural due process by providing such a deprivation may not be done so "except by due process of law." Indeed, we have recognized that the legislature may shorten existing prescriptive periods so as it provides so long as it provides a reasonable time for those affected to assert their rights. *See Lott*, 370 So.2d at 524 (holding "newly-created statute of limitation or one which shortens existing periods of limitation will not violate the constitutional prohibition against divesting a vested right provided it allows a reasonable time for those affected by the act to assert their rights."). Nonetheless, we have also recognized our constitution embodies substantive due process protections, which we have defined as "protection from arbitrary and unreasonable action. *Babineaux v. Judiciary Comm'n*, 341 So.2d 396, 400 (La. 1976). Applying this principle, we have consistently held that legislation, which retroactively divests plaintiffs of their causes of action, "would violate their constitutional substantive due process rights." *Burmaster v. Plaquemines Par. Gov't*, 07-2432 (La. 5/21/08), 982 So.2d 795, 811.

This substantive due process analysis is equally applicable to the case currently before us. As aptly explained by Justice Bradley over a century ago in his dissenting opinion in *Campbell v. Holt*, 115 U.S. 620, 631, 6 S. Ct. 209, 215, 29 L. Ed. 483 (1885), the interest of a defendant in an accrued defense of prescription is equally as valuable as the plaintiff's right to bring the suit:

The immunity from suit which arises by operation of the statute of limitations is as valuable a right as the right to bring the suit itself. It is a right founded upon a wise and just policy. Statutes of limitation are not only calculated for the repose and peace of society, but to provide against the evils that arise from loss of evidence and the failing memory of witnesses. It is true that a man may plead the statute when he justly owes the debt for which he is sued; and this has led the courts to adopt strict rules of pleading and proof to be observed when the defense of the statutes is interposed. But it is, nevertheless, a right given by a just and politic law, and, when vested, is as much to be protected as any other right that a man has. The fact that this defense pertains to the remedy does not alter the case. Remedies are the life of rights, and are equally protected by the constitution. Deprivation of a remedy is equivalent to a deprivation of the right which it is intended to vindicate, unless another remedy exists or is substituted for that which is taken away. The court has frequently held that to deprive a man of a remedy for enforcing a contract is itself a mode of impairing the validity of the contract. And, as before said, the

Guided by Louisiana's civil law tradition, we decline to upend nearly a half of a century's jurisprudence that recognizes the unique nature of vested rights associated with liberative prescription, which inure to the benefit of both plaintiffs (protecting an accrued cause of action) and defendants (protecting a defense of accrued liberative prescription). Therefore, despite the sickening and despicable factual allegations in this case, we must conclude that La. R.S. 9:2800.9, as amended by the revival provisions, cannot be retroactively applied to revive plaintiffs' prescribed causes of action. To find otherwise would divest defendants of their vested right to plead prescription in violation of Art. I, Section 2 of the Louisiana Constitution.

*Interruption or Suspension of Prescription*

Having found that, generally, accrued prescription extinguishes a civil obligation, resolution of the instant case hinges upon whether the instant case is actually prescribed. While plaintiffs do not dispute that their claims from the 1970's are prescribed on their face, they also assert that the doctrine of contra non valentem applies and operates to preclude the running of prescription in this case.

The record reflects that the trial court deferred ruling on the issue of whether there was an interruption or suspension of prescription under the doctrine of contra non valentem or otherwise. If plaintiffs establish that their claims have not prescribed due to an interruption and/or suspension under the doctrine of contra non valentem, then plaintiffs' claims are not time barred. However, if plaintiffs fail to

---

right of defense is just as valuable as the right of action. It is the defendant's remedy. There is really no difference between the one right and the other in this respect.

The legislation before us has the effect to reviving claims which defendants reasonably believed were reposed for half a century or more. To require defendants to now defend such claims after such a long period of time, where witnesses have died and critical documents have been lost, effectively destroys their ability to mount a viable defense. We must conclude such legislation is unreasonable and violative of substantive due process.

14

prove an interruption or suspension of prescription under the doctrine of contra non valentem, the matter is prescribed, and La. R.S. 9:2800.9, as amended by the revival provisions, cannot operate to revive Plaintiffs' claims.

## CONCLUSION

In summary, we hold that a defendant has a vested property right in accrued prescription. While we respect and understand the laudable intent of the legislation before us, we are constrained to find it runs afoul of the due process protections set forth in our constitution. Accordingly, we find that the legislature lacked the authority to revive the prescribed claims set forth under the facts alleged in this case. On this basis, we further declare Sections 2 of Acts 322 and 386 are unconstitutional.

We therefore reverse the judgment of the trial court insofar as it found La. R.S. 9:2800.9, as amended by Act 322 and Act 386, constitutionally revived the claims set forth herein upon which prescription had already accrued. However, in the interest of justice, we vacate the trial court's judgment insofar as it overruled defendants' exception of prescription and remand the case to the trial court to rule on the exception anew after plaintiffs have had an opportunity to raise any additional arguments regarding contra non valentem and the timeliness of their claims.[16]

## **DECREE**

For the reasons assigned, Section 2 of 2021 La. Acts No. 322 and Section 2 of 2022 La. Acts. No. 386 which revive claims barred by liberative prescription prior to the effective date of the Acts are declared unconstitutional and without effect. The

---

[16] We acknowledge that because there is a possibility the issue of prescription could be decided on non-constitutional grounds, we should not reach constitutionality based on the facts before us. *See, e.g., In Cat's Meow, Inc. v. City of New Orleans Through Dept. of Fin.*, 98-0601, p. 16-17 (La. 10/20/98), 720 So.2d 1186, 1199 (explaining the well-settled principle that courts should avoid reaching or determining constitutionality unless it is essential to resolution of the case). However, the unique revival provisions of La. R.S. 9:2800.9, as amended by Act 322 and Act 386, have the effect of displacing earlier prescriptive periods. As a result, it was essential for us to first decide the constitutionality of that statute in order to determine the applicable prescriptive period. Having found La. R.S. 9:2800.9, as amended by Act 322 and Act 386, cannot operate retroactively to displace vested rights of accrued prescription, we can now discuss any potential defenses to prescription available to plaintiffs based on the prescriptive limitations in effect at the time their causes of action arose.

15

judgment of the trial court finding these provisions to be constitutional is reversed.

In all other respects, the judgment of the trial court is vacated, and the case is

remanded to the trial court for further proceedings consistent with this opinion.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

# SUPREME COURT OF LOUISIANA

## No. 2023-CC-01194

## DOUGLAS BIENVENU, ET AL.

### VS.

## DEFENDANT 1 AND DEFENDANT 2 #87184

### C/W

## JOHN DOE, ET AL.

### VS.

## DEFENDANT 1 AND DEFENDANT 2 #87515

*On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin*

**WEIMER, C.J.**, dissenting.

The question posed in this case is simply stated yet significant: does the legislature have the authority, consistent with the due process guarantee of the Louisiana constitution, to revive a prescribed cause of action for sexual abuse of a minor? The majority concludes that it does not. I must very respectfully disagree based on the following analysis.

As the majority frames the query, the precise "issue presented for our review is whether the retroactivity provisions of Act 322, as interpreted by Act 386, are constitutional." See, **Bienvenu**, slip op. at 4. Because our Code and statutes contemplate, and implicitly sanction, the enactment of laws having retroactive effect,[1]

---

[1] La. C.C. art. 6 provides:

> In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.

La. R.S. 1:2 similarly provides: "No section of the Revised Statutes is retroactive unless it is expressly so stated."

whenever the question of retroactivity arises, we typically begin our analysis with a two-fold inquiry.  **M.J. Farms, Ltd. v. Exxon Mobil Corp.**, 07-2371, p. 18 (La. 7/1/08), 998 So.2d 16, 29.  The first step involves determining whether the legislature expressed an intent concerning the retroactive or prospective application of the law.  If the legislature did express such an intent, this part of the inquiry is at an end.  If, however, no intent is expressed by the legislature, then than intent must be discerned by classifying the law as either substantive, procedural, or interpretive.  *Id.*

In this case, as the majority finds, the legislature's intent to apply the amended provisions of La. R.S. 9:2800.9 retroactively by reviving previously prescribed claims is clearly and explicitly stated in Act 386.  ("It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period.")  Therefore, as to this first step in our inquiry, the conclusion is unassailable: the legislature intended retroactive application of the law.

Of course, that conclusion does not end the inquiry, as the defendants maintain that retroactive application of the amended statute would unconstitutionally divest them of a vested property right to claim the accrued defense of liberative prescription.  Plaintiffs counter, arguing that the right to claim liberative prescription is not a vested right and that, even if it does form a vested property right, the revival provisions in the Act are nevertheless constitutional.

To the extent the majority recognizes that the right to claim the accrued defense of liberative prescription is a vested property right, I concur in its analysis.[2]  I likewise concur in the majority's further conclusion that this property right is

_____

[2]  I particularly concur in the analysis that begins with an examination of the language of La. C.C. arts. 3447 and 1762, which together explain the effect of liberative prescription.

2

protected by constitutional due process guarantees. **Bienvenu**, slip op. at 9. ("[W]hen a party acquires the right to plead the defense of accrued prescription, his right becomes a vested property right protected by constitutional due process guarantees.") Where I depart from the majority is in its next step of the analysis. Rather than examine whether the revival of a prescribed cause of action for sexual abuse of a minor comports with the due process guarantee it cites as controlling, the majority simply holds that once a vested property right is found, any divestiture of that right is unconstitutional. There, the majority concludes its analysis. In other words, the majority holds that the legislature is without authority to revive a prescribed claim because to do so would violate the due process guarantee, but it does not attempt to examine, much less explain, how due process is violated in this instance.

In defense of its position, the majority cites **Burmaster v. Plaquemines Parish Government**, 07-2432 (La. 5/21/08), 982 So.2d 795, the single decision that endeavors to address whether the constitutional analysis simply stops with finding a vested right (as the majority holds here), or whether a further step is required (*i.e.,* a rational basis analysis consistent with the due process guarantee). Respectfully, **Burmaster** is hardly persuasive. In **Burmaster**, the court acknowledged that the issue was *res nova*, noting that "[w]hether the police powers of the state should be considered in a case involving a legislative enactment that divests plaintiffs of vested rights has apparently not been addressed directly by this court, presumably because it has never before been raised as an issue in cases before the court." *Id.*, 07-2432 at 23, 982 So.2d at 811. Inexplicably, however, after acknowledging the issue as *res nova*, the court went on to conclude that, because the court had not engaged in the due process analysis before in considering vested rights, it must not be necessary to

do so at all. *Id.*, 07-2432 at 23, 982 So.2d at 811-12 (citations omitted). Thus, **Burmaster** recognized that the analysis ceased, potentially prematurely, but concluded that was consistent with prior jurisprudence. ("[A] review of this court's decisions in *Austin, Bourgeois II*, and the cases they rely on, indicates that consideration of whether a legislative enactment qualifies as a legitimate exercise of police power is not one of the factors considered by this court in cases involving the retroactive application of newly adopted statutes to divest plaintiffs of vested rights. ... This court has consistently found that 'statutes enacted after the acquisition of ... a vested property right ... cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties,' without considering whether the adoption of the statute was within the state's police power."). *Id.* This is hardly a reasoned explanation. Yet, the logical consequence of this holding is far-reaching. It essentially elevates vested property rights (which are purely economic rights) above all other rights, including such fundamental rights as the rights to privacy, to free speech, and to freedom of religion and from racial discrimination. And, it does so without explaining or examining why such a result is warranted under the due process clause of our constitution.[3]

_____

[3] To the extent the majority purports to engage in a substantive due process analysis in a footnote (n.15) to its opinion, that analysis is not any more enlightening, as it simply again cites **Burmaster**, which, it bears repetition, declines to engage in a substantive due process analysis because the court had not previously endeavored to do so. While the footnote goes on to purportedly find a due process violation, it does so, not on grounds the legislation is not rationally related to a legitimate governmental interest (the substantive due process test), but on the basis of alleged problems of proof affecting defendants. However, these problems of proof are policy considerations that were vetted by the legislature in its deliberations. It is not a court's role to second guess the legislature's resolution of these concerns. The legislature determined that it was in the public interest to identify hidden child predators so as to prevent future abuse, shift the costs of the abuse, including therapy and medical expenses, to those who directly caused or facilitated the abuse, and educate the public about the prevalence of the problem. This reflects an overriding governmental interest enacted to address a hidden and systemic societal problem impacting children. Insofar as problems of proof, it remains the plaintiff's burden to prove the fact of abuse, damages, and explain the reason for the delay in bringing suit. That proof is equally subject to the passage of time and loss of evidence.

4

In my view, a proper analysis of the issue presented herein starts with the well-established principle that "[b]ecause the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit." **Fruge v. Bd. of Trustees of La. State Employees' Ret. Sys.**, 08-1270, p. 5 (La. 12/2/08), 6 So.3d 124, 128. As a result, "a party challenging the constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the statute in question." *Id.*, 08-1270 at 5-6, 6 So.3d at 128.

The constitutional provision the defendants point to in this case as protecting absolutely their vested property right to claim the defense of prescription is La. Const. Article I, § 2, which states: "No person shall be deprived of life, liberty, or property, except by due process of law." A plain reading of this provision suggests that no right–whether it be to life, liberty *or property*–is absolutely protected; otherwise, there would be no need for the phrase "except by due process of law." Rather, the guarantee that is extended by the constitution is not unqualified protection, but protection from arbitrary and unreasonable action. **Progressive Security Insurance Co. v. Foster**, 97-2985, p. 22 (La. 4/23/98), 711 So.2d 675, 688; **Babineaux v. Judiciary Comm'n.**, 341 So.2d 396, 400 (La. 1976) ("The essence of substantive due

Ultimately, each case must be assessed on the merits of that case.

Contrary to the assertion of defendants, the resolution here will not "open the floodgates" for the legislature to act without restraint, as every piece of legislation can be legally challenged and tested for compliance with due process. This case is strictly limited to its facts. This decision examines whether a particular piece of legislation, addressing a particular societal and systemic problem, hidden from the public, which impacts children and affects the public safety, welfare and morals comports with the due process guarantee.

5

process is protection from arbitrary and unreasonable action."). Indeed, as far back as 1938, the court recognized that rights and privileges guaranteed by the Constitution "cannot be taken from a citizen without the due process of law. But the right to contract, *to own and use property*, is not absolute. Private rights must always yield to the public good." **Bd. of Barber Exam'rs of La. v. Parker**, 182 So. 485, 490 (La. 1938) (emphasis added).

The majority's holding in this case, and what prior jurisprudence concerning vested rights implies, is that any interference with vested rights is *per se* arbitrary and unreasonable and, thus, constitutionally prohibited. However, it is difficult to understand how such a conclusion is justified; and how the purely economic interest represented by the right to plead prescription is protected above all others, especially without any language in the Constitution expressly extending such protection.[4]

In its opinion, the majority cites **Elevating Boats, Inc. v. St. Bernard Par.**, 00-3518 (La. 9/05/01), 795 So.2d 1153, <u>overruled on other grounds</u>, **Anthony Crane Rental, L.P. v. Fruge**, 03-0115 (La. 10/21/03), 859 So.2d 631, as authority for its conclusion that retroactive application of a statute that would disturb already acquired rights is not permissible. Drawing on Planiol, the court in **Elevating Boats** explained:

---

[4] While the 1921 Constitution specifically prohibited the legislature from enacting legislation that divested parties of their vested rights, the current constitution does not contain similar language. In fact, an amendment adding language prohibiting the divestiture of vested rights was defeated at the convention. It has been suggested that the omission of any reference to vested rights in the 1973 Constitution was not a substantive change because vested rights are included under the broad definition of "life, liberty or property," in Article 1, § 2. Lee Hargrave, *The Declaration of Rights of the Louisiana Constitution of 1974*, 35 La. Law Rev. 1, 5-6 (1974). However, this suggestion does not explain why a vested right (if indeed vested rights fall under the broad definition of "property") in an accrued cause of action, or, as here, in the right to plead prescription, is not subject to the same due process analysis that is accorded every other right protected by the due process guarantee.

I concur in Professor Hargrave's analysis that the language was changed to streamline the 1974 Constitution, a goal of the delegates because the 1921 Constitution was wordy and bloated by amendments.

6

[A]fter the prescriptive period on an obligation has run, an obligor gains the *right* to plead prescription. In such a situation, that *right* to plead prescription has already accrued and application of a lengthened period to revive the obligation, and effectively remove the right to plead prescription, would "modify or suppress the effects of a right already acquired."

**Elevating Boats**, 00-3518 at 14, 795 So.2d at 1164 (quoting 1 MARCEL PLANIOL, TREATISE ON THE CIVIL LAW, § 243 (12th ed. 1939)). Based on this proposition, the court then went on to declare: "Thus, we have noted that the Legislature is without the authority to revive a prescribed claim." ***Id.***

With all due respect to the court, this reading of Planiol is incomplete. What Planiol writes is that, as a *general rule*, laws are not applied retroactively. There are exceptions, however:

> Certain laws, as exceptions to the rule, produce their effect retroactively and apply to old facts, regardless of their date. This is so in three cases: 1st, *when the law-maker has expressly so declared*; 2nd, when the law is interpretive; and 3rd when it is a penal law which suppresses or lessens a penalty."

Planiol, § 249 (emphasis added). Moreover, and more importantly, as Planiol goes on to explain, the principle of non-retroactivity is a rule of interpretation for the judiciary. It is not a rule of constitutional law, nor is it inviolate.

> The principle of non-retroactivity is not a principle of constitutional law which binds the law-maker himself. It is set forth in an ordinary law, that is to say in Art. 2 of the Civil Code. It, therefore, may be superseded by another law. But the legal rule is binding upon the courts. There would be an error which would entail "reversal" for violation of Art. 2, if a court were to give retroactive effect to a law. The principle is thus effective solely in regard to the interpretation of laws. The law-maker remains free, when he so desires, to give retroactive effect to the provisions he decrees.

Planiol, § 250.

Thus, as Planiol explains, the rule of non-retroactivity is not a rule of constitutional dimension; it is a rule of interpretation for the judiciary. The

legislature is free to enact laws which operate retroactively as long as those laws do not violate the limits imposed on the legislature through the constitution. In this case, those limits are the ones imposed through La. Const. Article I, § 2, the due process clause, and the constitutionality of the legislation in question must be evaluated through the lens of that provision.[5]

Because neither the parties nor the majority have identified any provision in the constitution that categorically prohibits an exercise of police power where such would impair vested rights, it is not only appropriate, but necessary, that the validity of the revival provision be tested against the due process guarantee.[6] The essence of that guarantee is protection from arbitrary and unreasonable action and, where legislation involves social or economic regulation, and does not affect fundamental rights, it need only have a rational relationship to a legitimate governmental interest to survive due process scrutiny. **Med Express Ambulance Service, Inc. v. Evangeline Parish Police Jury**, 96-0543, p. 7-8 (La. 11/25/96), 684 So.2d 359, 365. Here, the interest claimed by defendants is the property interest in the right to plead the defense of accrued liberative prescription, an economic interest that does not implicate

---

[5] Admittedly, there are numerous decisions that recite the proposition advanced by the majority here–that vested rights are protected by the due process clause of the constitution and cannot, consistent with that guarantee, be disturbed–without taking the next step and examining whether the legislation in question, in fact, comports with due process. However, it appears that rather than a considered decision to afford unqualified and categorical protection to vested rights under the due process clause, this language is most likely a concept carried over from language in the 1921 Constitution. That constitution, in Article IV, § 15, entitled "Limitations," provided: "No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid." This language does not appear in the current constitution. To the extent vested rights are protected in the current constitution, that protection is extended through the due process guarantee and, once a vested right is found to exist, requires a due process analysis. Even the language in the 1921 Constitution had a proviso allowing divestiture of vested rights "for the purposes of public utility."

[6] While due process has two components–procedural and substantive–only substantive due process is implicated in this case.

8

fundamental rights.[7]  The legislation challenged, which attempts to address the societal costs of child sexual abuse, is social welfare legislation.  As a result, the applicable due process test is whether the legislation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole.  **Bazley v. Tortorich**, 397 So.2d 475, 483 (La. 1981).

Application of that test in this case leads inexorably to the conclusion that the revival provision in the Act is rationally related to a legitimate government interest.  As articulated by the main sponsor of the Act in the House, Representative Jason Hughes, the revival provision serves three public purposes: (1) the provision assists in identifying hidden child predators so children will not be abused in the future; (2) shifts the costs of the abuse from the victims and society to those who actually caused it; and (3) educates the public about the prevalence and harm from child sexual abuse to prevent future abuse.  See, *May 3, 2021 House Bill 492 Hearing,* 2021 Reg. Sess., pp.6-7.  These articulated interests are both legitimate and compelling.

Indeed, as Representative Hughes pointed out during the legislative floor debate, child sexual abuse is a unique tort in which the average victim does not come forward until they are 52 years old.  *Id.*  For many victims of child sexual abuse, the revival provision represents their first and only opportunity to bring suit.  Providing that opportunity to those victims is a legitimate legislative purpose.

---

[7]  See, **Bazley v. Tortorich**, 397 So.2d 475, 483 (La. 1981) (fundamental rights include: freedom of expression and association, the right to vote, the right to interstate travel, the right to privacy, the right to fairness in the criminal process, the right to fairness in procedures concerning governmental deprivations of life, liberty or property); See also, **Picone v. Lyons**, 601 So.2d 1375, 1376-77 (La. 1992) (quoting **Chase Securities Corp. v. Donaldson**, 325 U.S. 304, 314 (1945)) (Statutes of limitation "represent a public policy about the privilege to litigate.  Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual.").

It is uniquely the role of the legislature to weigh the myriad policy considerations on both sides of a debate,[8] and in this instance the legislature performed its role, debating the legislation at issue in public forums in two legislative committees, and on the floor of the House and Senate. Ultimately, the legislative action was signed into law by the Governor. This court's role is not to re-weigh that policy calculation, but to evaluate the constitution to determine if this statutory enactment conforms to due process analysis. This court cannot strike down a provision enacted by the legislature unless it is inconsistent with the due process guarantee. The presumption is that the legislature acts within the limits of the constitution. **State v. Weaver,** 01-0467, p. 5 (La. 1/15/02), 805 So.2d 166, 170.

Given Louisiana's legitimate interest in protecting its citizens who were sexually abused as minors and in providing them with the ability to seek redress in the courts, and the narrowly tailored nature of the relief provided–the legislation revives, for a short period of time, for a narrow category of tort victims, actions otherwise prescribed–I would find that the revival provision is consistent with the due process guarantee. Under the due process clause, no rights–not even fundamental ones–are absolute. The due process clause simply offers protection from arbitrary and unreasonable action by the government. The revival provision at issue is not arbitrary (in fact, in this case it is arguable that the "arbitrary and unreasonable" conduct was the alleged sexual abuse perpetrated upon children by those in society who were placed in positions of authority). And, the provision has been demonstrated to have a substantial relationship to public safety, morals and welfare. See, **Francis v. Morial**, 455 So.2d 1168, 1172-73 (La. 1984) (To be sustained as a

---

[8] These include redress for damages verses potential loss of evidence and witnesses because of delay in bringing the action.

10

valid exercise of the police power, legislation must tend in some degree to prevent an offense or evil or otherwise preserve public health, morals, safety or welfare). Indeed, when fundamental rights are not involved, "[i]n the area of substantive due process, courts look only to see if a particular legislative measure was a rational way to correct a problem." **Hayden v. Louisiana Public Service Commission**, 553 So.2d 435, 440 (La. 1989). Under this standard, the provision at issue passes constitutional muster.

SUPREME COURT OF LOUISIANA

No. 2023-CC-01194

DOUGLAS BIENVENU, ET AL.

VS.

DEFENDANT 1 AND DEFENDANT 2 #87184

C/W

JOHN DOE, ET AL.

VS.

DEFENDANT 1 AND DEFENDANT 2 #87515

On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin

**CRICHTON, J., additionally concurs and assigns reasons:**

I agree with the majority opinion's conclusion that La. R.S. 9:2800.9, as amended by the revival provisions in Act 386, is unconstitutional. However, I write further to emphasize the importance of the remedy that may still be available to the victims in this matter, namely, *contra non valentem*.

The rules of prescription are "designed to prevent old and stale claims from being prosecuted" and generally, the exceptor bears the burden of proof at the trial of the peremptory exception. *Wells v. Zadeck*, 11-1232, p. 7 (La. 3/30/12), 89 So. 3d 1145, 1149, citing *Campo v. Correa*, 01-2707, p. 7 (La. 6/21/02), 828 So. 2d 503, 508. However, "if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed." *Id*., citing *Campo,* 01-2707 at p. 7, 82 So. 2d at 508; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So. 2d 1383, 1386 (La. 1993). Furthermore, in the absence of evidence, the objection of prescription must be decided upon the facts as alleged in the petition, and all allegations contained therein are accepted as true. *Wells*, 11-1232 at p. 7, 89 So. 3d at 1149-50. Article 931 of the Louisiana Code of Civil Procedure specifically

1

states, in pertinent part, that ". . . evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition."

Although La. C.C. art. 3467 provides that "[p]rescription runs against all persons unless exception is established by legislation," in order to "mitigate the occasional harshness of prescriptive statutes,"[1] Louisiana courts have created and long recognized a jurisprudential exception to prescription known as *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit.[2] *Prevo v. State ex rel. Dept. of Public Safety and Corrections Division of Probation and Parole*, 15-823, p. 5 (La. 11/20/15), 187 So. 3d 395, 398 (rehearing denied 1/25/16), citing *Carter v. Haygood*, 04-646 (La. 1/19/05), 892 So. 2d 1261. "This principle is based on the equitable notion that no one is required to exercise a right when it is impossible for him or her to do so." *Prevo, supra,* citing *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La.1992).[3] This Court has stated that there are four instances wherein *contra non valentem* is applied to prevent the running of prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably

---

[1]*See Bouterie v. Crane*, 616 So. 2d 657 (La. 1993) ("Contra non valentem was created by jurisprudence to soften the occasional harshness of prescriptive statutes. . . .").

[2]One commentator has argued that the "doctrine of contra non valentem was secreted into a perceived gap between the reasonableness and fairness of prescriptive legislation." Douglas Nichols, *Contra Non Valentem*, 56 La. L. Rev. 337 (1995).

[3]*See also Braud on Behalf of Braud v. Mounger,* 22-1659 (La. 1/18/23), 353 So. 3d 714 (La. 1/18/23) (Crichton, J., dissenting from writ denial, noting contra non valentem may apply to interrupt prescription against defendants, who were not served for more than one year after subject accident); and *Lapuyade v. Rawbar Inc.*, 16-908 (La. 9/6/16), 199 So. 3d 610 (Crichton, J., dissenting from writ denial, stating that contra non valentem can apply "'where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant[,]'" (quoting *Marin v. Exxon Mobil Corp.*, 09-2368, p. 12 (La. 10/19/10), 48 So. 3d 234, 245)).

> knowable by the plaintiff, even though this [] ignorance is not induced by the defendant.

*Carter v. Haygood*, 04-646, p. 11 (La. 1/19/05), 892 So. 2d 1261, 1268 (internal citation omitted).

I do not opine on the merits of whether pleading of *contra non valentem* will succeed under the allegations in this case, egregious as they are. However, it is important to note that plaintiffs were children, ranging in age from eight to fourteen, at the time of the alleged incidents giving rise to this litigation, and, whether or not they were "innocent[s] who [were] lulled into dormancy by the defendant" is an important consideration as "Louisiana judges are particularly concerned with innocent children." Douglas Nichols, *Contra Non Valentem*, 56 La. L. Rev. 337, 355 (1995).[4] Moreover, these determinations are highly fact-intensive and whether *contra non valentem* applies to suspend prescription generally proceeds on an individual, case-by-case basis. *Shell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-61 (La. 12/10/21), 333 So. 3d 368, 374. Thus, while our ruling today is constrained by constitutionality, a thorough review of the allegations in this specific matter, as they relate to any possible claim of *contra non valentem*, is warranted.

---

[4]The article further notes:

> For a brief period immediately before legislative extension of the prescriptive period for child sexual abuse, abused children appeared to be the ideal plaintiffs to invoke the doctrine of contra non valentem. *See, e.g., Wimberly v. Gatch*, 635 So. 2d 206, 207 (La. 1994) (child was ten years old when the molestation ceased); *see also* La. Civ. Code art. 3496.1 (increasing the prescriptive period for abuse of a minor to three years from the time the victim attains majority).

Douglas Nichols, *Contra Non Valentem*, 56 La. L. Rev. 337, 355, n. 117 (1995)

**SUPREME COURT OF LOUISIANA**

**No. 2023-CC-01194**

**DOUGLAS BIENVENU, ET AL.**

**VS.**

**DEFENDANT 1 AND DEFENDANT 2 #87184**

**C/W**

**JOHN DOE, ET AL.**

**VS.**

**DEFENDANT 1 AND DEFENDANT 2 #87515**

On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin

**CRAIN, J.**, dissenting.

The statute at issue addresses only perpetrators of alleged sexual abuse. The majority interprets the Louisiana constitution to give them protection found nowhere else in our law. In doing so, the majority elevates a "vested" right to a status of protection not enjoyed by our most fundamental rights, such as the right to bear arms, the right of free speech, and the right to exercise one's religion. I disagree.

Plaintiffs were children, some as young as 8 years old, when they became alter servers for Father Kenneth Morvant, a priest employed by the Diocese of Lafayette. According to plaintiffs, Morvant repeatedly sexually abused them for years, usually committing the alleged lurid acts at "sleepovers" at the rectory where the boys were given alcohol and token gifts like free tickets to the church fair. Under then-existing law, plaintiffs' causes of action prescribed within one year of the alleged abuse, before some of the boys were even teenagers. *See* La. Civ. Code arts. 3536, 3537, 3541 (1870).

To provide a meaningful opportunity for judicial relief, our legislature recently established a window of time for persons who suffered sexual abuse as a minor to sue their alleged abusers and other responsible parties, regardless of when the abuse occurred. *See* 2022 La. Acts No. 386, §2; 2021 La. Acts. No. 322, §2. This legislation passed by respective votes of 134-0 and 128-0. Today a majority of this court invalidates these legislative acts, finding they violate the defendants' due process rights.

Our constitution succinctly states the controlling law: "No person shall be deprived of life, liberty, or property, *except by due process of law*." La. Const. Art. I, §2 (emphasis added). Known as the "due process clause," this provision is the sole basis for defendants' constitutional challenge to Acts 386 and 322. In declaring the legislation unconstitutional, the majority finds the procedural right to bar plaintiffs' claims by liberative prescription is "property" protected by the constitution. The due process clause, according to the majority, absolutely prohibits the legislature from depriving defendants of this property. The majority reaches this conclusion without considering whether the deprivation was done in accordance with the very phrase that gives the clause its name: "by due process of law."

Volumes of jurisprudence instruct courts on the proper analysis of a due process challenge, whether under our state constitution or under the same provision in the 5th and 14th Amendments of the U.S. Constitution. "The first inquiry in every due process challenge is whether [a party] has been deprived of a protected interest in 'property' or 'liberty.'" *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40; 119 S.Ct. 977, 989; 143 L.Ed.2d 130 (1999); *see also Mathews v. Eldridge*, 424 U.S. 319, 332; 96 S.Ct. 893, 901; 47 L.Ed.2d 18 (1976); *State v. Bazile*, 12-2243 (La. 5/7/13), 144 So. 3d 719, 730; *State v. Weaver*, 01-0467 (La.1/15/02), 805 So. 2d 166, 173. If a constitutionally protected right is established, the court must next determine if the state's deprivation of that right was with due process. *See American*

2

*Manufacturers*, 526 U.S. at 59; 119 S.Ct. at 989; *Mathews*, 424 U.S. at 332; 96 S.Ct. at 901; *State v. Bazile*, 144 So. 3d at 730; *State v. Weaver*, 805 So. 2d at 173-74.

The majority made the first determination, finding the right to assert prescription is constitutionally protected "property." This conclusion is not without doubt. Liberative prescription "is a mode of barring of actions as a result of inactions for a period of time." La. Civ. Code art. 3447. The U.S. Supreme Court, reviewing the similar doctrine of statute of limitations, has repeatedly held the right to assert this procedural defense is not "property" under the due process clause. *See Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 316; 65 S.Ct. 1137, 1143; 89 L.Ed. 1628 (1945); *Campbell v. Holt*, 115 U.S. 620, 628; 6 S.Ct. 209, 213; 29 L.Ed. 483 (1885). As explained in *Campbell*:

> We certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case. The statutes of limitation . . . are arbitrary enactments by the law-making power . . . . No man promises to pay money with any view to being released from that obligation by lapse of time. It violates no right of his, therefore, when the legislature says time shall be no bar, though such was the law when the contract was made. . . . [N]o right is destroyed when the law restores a remedy which had been lost . . . . We are unable to see how a man can be said to have *property* in the bar of the statute as a defense to his promise to pay.

*Campbell*, 115 U.S. at 629; 6 S.Ct. at 214 (citations omitted; emphasis in original); *see also Chase Securities*, 325 U.S. at 316; 65 S.Ct. at 1143 ("Certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment."); *Picone v. Lyons*, 601 So. 2d 1375, 1377 (La. 1992) (citing *Chase* for the foregoing premise). While the Supreme Court's reasoning is persuasive, I anchor my dissent on the second element of the due process analysis.

Unless fundamental rights are affected, legislation complies with substantive due process if it is rationally related to a legitimate government interest. *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729; 104 S.Ct. 2709, 2717;

3

81 L.Ed.2d 601 (1984); *State v. Weaver*, 805 So. 2d at 173; *Progressive*, 711 So. 2d at 688; *Med Express Ambulance Serv., Inc. v. Evangeline Par. Police Jury*, 96-0543 (La. 11/25/96), 684 So. 2d 359, 365. If the propriety of the government authority's action is debatable, there is no substantive due process violation and the action will be upheld. *State v. Weaver*, 805 So. 2d at 173. This test recognizes the due process clause "secure[s] the individual from the arbitrary exercise of the powers of government." *Bank of Columbia v. Okely,* 4 Wheat. (17 U.S.) 235, 244, 4 L.Ed. 559 (1819); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 845; 118 S.Ct. 1708, 1716; 140 L.Ed.2d 1043 (1998). "[T]he crux of due process is protection from arbitrary and unreasonable action." *Progressive Security Ins. Co. v. Foster*, 97-2985, p. 22 (La. 4/23/98); 711 So.2d 675, 688. The "rational relationship" test applies in this case because the right to assert prescription is not a fundamental right. *See Chase Securities*, 325 U.S. at 314; 65 S.Ct. at 1142 (recognizing the "shelter" provided by statutes of limitation "has never been regarded as . . . a fundamental right").

This court used the rational-relationship standard to reject a similar constitutional challenge in *State v. All Property & Cas. Ins. Carriers Authorized & Licensed To Do Bus. In State*, 06-2030 (La. 8/25/06), 937 So. 2d 313. The majority attempts to distinguish *All Property* because "the case did not concern a constitutional due process claim." That is not correct. After rejecting a claim based on the "contracts clause," the *All Property* court likewise denied a due process challenge:

> Insofar as the defendant insurers claim imposition of the extended prescriptive period violates constitutional due process concerns, our conclusion that no unconstitutional violation occurred would be the same because the tests are similar. The Supreme Court has held '[t]he retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process: a legitimate legislative purpose furthered by rational means.' *General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992),

4

> *citing Pension Benefit Guaranty Corporation v. R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984).

*All Property*, 937 So. 2d at 327 n.14.

Here, the government interests served by Acts 386 and 322 were described during the legislative process as "identif[ying] hidden child predators . . . so children will not be abused in the future," "shift[ing] the costs of the abuse from the victims and society to those that actually caused it," and "educat[ing] the public about the prevalence and harm from child sexual abuse to prevent future abuse." *See* Comments by Representative Jason Hughes, Committee on Civil Law and Procedure, Louisiana Legislature, 2021 Regular Session, 5/3/21. As expressed by an appellate court in a similar case, the revival of claims for sexual abuse involving minors "serves a compelling legitimate interest by providing an opportunity for the most vulnerable members of our society to hold accountable those responsible for the lifelong damage they have endured." *Sam Doe v. The Society of the Roman Catholic Church of the Diocese of Lafayette*, 22-120 (La. App. 3 Cir. 8/17/23) at *19, ___ So. 3d ____.

These are all legitimate government interests rationally served by revival of the prescribed claims. Due process requires nothing more. *See* La. Const. Art. I §2; *Pension Benefit*, 467 U.S. at 729; 104 S.Ct. at 2717; *State v. Weaver*, 805 So. 2d at 173; *Progressive*, 711 So. 2d at 688; *Med Express*, 684 So. 2d at 365. Act 322 §2 and Act 386 §2 are legitimate exercises of the state's police power and do not violate the due process clause. *See* La. Const. art. I §§ 2 and 4; art. VI, §9(B); *Pension Benefit*, 467 U.S. at 729; 104 S.Ct. at 2717; *State v. Weaver*, 805 So. 2d at 173; *Progressive*, 711 So. 2d at 688; *Med Express*, 684 So. 2d at 365.[1]

---

[1] Defendants do not challenge the statute on procedural due process grounds. Generally applicable legislation is not subject to procedural due process constraints because the legislative process suffices. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433; 102 S.Ct. 1148, 1156; 71 L.Ed.2d 265 (1982) ("[T]he legislative determination provides all the process that is due."); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445; 36 S.Ct. 141, 142; 60 L.Ed. 372 (1915); *Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1149 (5th Cir.1997); *Messina v. St.*

Holding otherwise, the majority relies on jurisprudence addressing whether a particular right was adequately vested to warrant constitutional protection. Vesting is not an issue in this case. There is no dispute defendants acquired the right to plead prescription. The constitutional issue turns on whether this right to assert prescription as a defense warrants constitutional protection and, if so, whether its deprivation complied with due process. The right to plead prescription is not so paramount and superior that it can never be deprived. This premise elevates a procedural right above even fundamental rights, is contrary to the text of the due process clause, and conflicts with over a century of jurisprudence from the U.S. Supreme Court and this court. To the extent any case contradicts this established law, I would overrule it.

Lastly, in a footnote, the majority finds the subject legislation "unreasonable" because it requires defendants to "defend such claims after such a long period of time." This is not the correct standard for due-process review and usurps legislative authority. If retroactive application of a statute rationally serves a legitimate legislative purpose, "judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." *Pension Benefit*, 467 U.S. at 729; 104 S.Ct. at 2717-18. I recognize the difficulties of defending a suit for conduct occurring decades ago. But equally compelling arguments support restoring a right to sue that was lost while plaintiffs were still children, all due to an archaic prescription provision no longer a part of our law, yet the procedural bar it produced persists. Absent a constitutional violation, which defendants have not established, the forum for this debate is the legislature, not this court. The legislature had that debate and—without a single dissenting vote—abolished the procedural bar

---

*Charles Par. Council*, 03-644 (La. App. 5 Cir. 12/30/03), 865 So. 2d 158, 161, *writ denied,* 04-0285 (La. 3/26/04), 871 So. 2d 354.

6

and restored plaintiffs' right to sue. I would affirm the trial court's judgment finding this legislative action constitutional.

**SUPREME COURT OF LOUISIANA**

**No. 2023-CC-01194**

**DOUGLAS BIENVENU, ET AL.**

**VS.**

**DEFENDANT 1 AND DEFENDANT 2 #87184**

**C/W**

**JOHN DOE, ET AL.**

**VS.**

**DEFENDANT 1 AND DEFENDANT 2 #87515**

*On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin*

**GRIFFIN, J., concurs in the result and assigns reasons and concurs for the reasons assigned by Justice Crichton.**

I generally agree with the legal principles set forth in the majority's opinion. However, I write separately to emphasize the necessity to adhere to the fundamental tenets of our Constitution which requires each branch of government to respect the powers bestowed. *See* La. Const. art. II, §§ 1 and 2. Our founding fathers brilliantly established three co-equal branches of government: the legislative, executive, and judicial branch. These branches have separate and distinct powers, yet the branches must work together towards preventing the forming of any type of tyranny. The powers granted by the framers are not without limitation, and all actions must be examined within the Constitutional safeguards provided by both the State and Federal Constitutions. *See M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 17 (La. 7/1/08), 998 So.2d 16, 29 (ability of the state legislature to enact legislation is limited by that which is prohibited under the state constitution). In making such an examination, we must be mindful to ensure that the rights of all are protected.

I would be remiss if I did not acknowledge the horrific and egregious nature of the allegations presented by the plaintiffs. I also recognize the quagmire this legislation creates for defendants who will be faced with having to mount a defense after so much time has elapsed. However, I find the issue directly facing this Court requires we ensure fundamental fairness to all and make a policy decision rooted in our Constitution. Our decision today affirms and acknowledges the foregoing limitations stated above.